STATE of Missouri, Respondent,

v.

David L. PANTER, Appellant.

No. KCD 27455.

Missouri Court of Appeals, Kansas City District.

March 29, 1976.

Motion for Rehearing and/or Transfer Denied May 3, 1976.

Austin B. Speers, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

On a change of venue from the Platte County Circuit Court, a jury in the Clay

County Circuit Court found David L. Panter guilty of selling a controlled substance (heroin) and fixed his punishment at 20 years' imprisonment. This appeal is from the ensuing judgment and sentence.

Stephen Dennis Courtois, who was employed by the Platte County Sheriff's Office as a deputy sheriff for the specific purpose of investigating narcotics traffic, testified that, at around 11:00 P.M., June 27, 1973, he, accompanied by Susan Cole, went to Panter's apartment in Platte County. There Panter handed him an envelope which Panter said contained heroin and Courtois paid Panter $155, the price Panter fixed for the contents of the envelope. Subsequent chemical analysis of the contents of the envelope confirmed that it was in fact heroin.

Panter was arrested December 12, 1973 on a charge of illegal sale of a controlled substance, based on the June 27th sale to Courtois.

Panter testified in his own behalf and denied having made the sale to Courtois. The defense also produced deposition testimony of Susan Cole that she had never seen Panter make a sale of drugs.

On this appeal two points relied upon relate to the testimony of Thomas Goodner. Goodner was a private detective whom the defendant's attorney had employed to investigate civil cases handled by the attorney. After Panter employed him in this case, the attorney suggested to Goodner that he get in touch with Panter, that Panter might want his services as an investigator. Panter did employ Goodner, paying him $1300 as a partial payment for his services. A dispute arose between Panter and Goodner about further payment and Goodner brought suit to recover for the work he claimed to have done and for which he had billed Panter $594.00. The suit was settled by a payment by Panter to Goodner of an additional $250.00.

The trial of the criminal charge was set for May 20, 1974. On Friday evening, May 17, counsel for the defendant was advised that the state intended to ask leave to endorse Goodner as a witness for the state.

On May 20, the court permitted the endorsement and continued the case to May 22, to permit defendant to take Goodner's deposition if he wished. On May 21, a motion was filed on behalf of defendant, in which it was alleged that Goodner had been employed by Panter on the advice of his attorney and that a confidential relationship existed between Panter and Goodner and that all communications, writings, statements or material obtained by Goodner in the course of his investigation were absolutely privileged and could not be used by the prosecution. The motion requested that Goodner not be permitted to testify and that no material he had obtained in the course of his investigation be allowed in evidence at the trial. The motion was overruled.

Goodner was called as a witness for the state, and, over defendant's renewed objection that he was disqualified, testified to matters learned by him in the course of his investigation in defendant's employ. Goodner said that, in his investigation on behalf of Panter, he uncovered some matters which he asked Panter to clarify at a meeting at Kansas City International Airport in January, 1974. Goodner stated that he asked Panter directly whether or not he actually was involved in the June 27th sale and Panter "indicated" to him that he had sold a quantity of heroin to a man he knew as Steve Behen with Susan Cole present at his apartment. (Courtois used the name "Steve Behen.")

█ On this appeal, appellant's first claim of error in permitting Goodner's testimony is premised upon the contention that, as Panter's agent, Goodner's statements could not be admitted against his principal when he was not authorized to make such statements. This contention is so obviously lacking in merit as to require little attention. This is not a case of an agent speaking on behalf of his principal. He was testifying to statements made to him by his employer, which statements amounted to admissions of the charge for which the employer was on trial. As admissions against

interest, the statements were admissible on such trial.

■ The second assertion with respect to Goodner's testimony is that communications between appellant and Goodner were privileged. For this purpose, he relies upon an extension of the attorney-client privilege. § 491.060(3), RSMo 1969. The attorney-client privilege is extended to the media of communication between a client and his attorney. *Tyler v. Hall,* 106 Mo. 313, 17 S.W. 319, 321 4. (1891); 58 Am.Jur. Witnesses, § 498, p. 279 (1948). However, there was no showing in this case that the conversation between appellant and Goodner was for the purpose of enabling Goodner to convey the information to appellant's attorney. The role of the attorney in the Goodner investigation is vague. Except for the fact that the attorney suggested that Goodner get in touch with appellant, nothing appears of dealings between Goodner and the attorney. Absent evidence that the information was given to Goodner for the purpose of having him convey it to the attorney, the attorney-client privilege did not preclude Goodner's testimony.

■ Appellant also complains of the short time before trial within which he was notified of the intention to endorse Goodner as a witness. When this complaint was voiced to the trial court, the court directed the state to make the witness available should the defense wish to depose him. The defendant did not elect to take advantage of the opportunity to learn the witness's testimony. In such circumstances, there has been no showing of abuse of the discretion entrusted to the trial court on this matter. *State v. Hampton,* 172 S.W.2d 1, 3[7] (Mo.1943); *State v. Cobb,* 444 S.W.2d 408, 415[13, 14] (Mo.1969).

Appellant's next assignment of error relates to the admission of Goodner rebuttal testimony.

In the cross-examination by the prosecuting attorney of appellant, the following occurred:

"Q And you never sold him [Courtois] any kind of substance at any time?

"A No, sir.

"Q You never told Mr. Goodner you did?

"A No, sir.

"Q Isn't it a fact Mr. Goodner confronted you with the results of his investigation and that you owned up to 'Yes, I sold it,' isn't that what happened?

"A No.

"Q Did you make any indication to Mr. Goodner that day at Kansas City International Airport that you had ever sold anything?

"A No, sir.

"Q Any controlled substance, drugs?

"A I've never sold anything to anyone.

"Q I beg your pardon?

"A I've never sold anything to anyone at any time.

"Q Ever?

"A Just auto parts.

"Q You ever represented to anybody that you sold drugs?

"A No, sir. My business was founded basically on loving people and doing things for people which is why the doors are still open in spite of all this."

Goodner was recalled by the state as rebuttal witness, and asked if appellant "ever wrote out a list of drugs sales and gave it to you." Defense counsel objected that the matter was immaterial, "not proper rebuttal," irrelevant, and sought to impeach on a collateral issue. The objection was overruled. The witness then identified a document as a list of names which Panter gave him at a conference at Kansas City International Airport and told him that it contained the names of persons he had bought drugs from and sold them to, and a code showing the drugs involved and the regularity of his activity. According to Goodner, Panter prepared the list in his presence after Goodner told him the information he had discovered and stated that he "was tired of getting surprises."

On this appeal, appellant's brief is woefully deficient in stating, in its points and authorities, the reason relied upon in as-

signing the ruling of the trial court as error. Here the point stated is merely that the trial court erred in allowing rebuttal testimony by Goodner over defendant's objections. Rule 84.04(d) requires "Points Relied On" to include not only the actions of the trial court sought to be reviewed but also "wherein and why they are claimed to be erroneous, * * *." The argument is of little assistance in revealing the basis of the claimed error. The cited cases (*State v. Reed,* 447 S.W.2d 533 (Mo.1969); *State v. Jackson,* 495 S.W.2d 80 (Mo.App.1973), and *State v. Carter,* 475 S.W.2d 85 (Mo.1972)) state and apply the general rule prohibiting evidence of other crimes. Appellant also cites *State v. Earvin,* 510 S.W.2d 419 (Mo. 1974), which dealt with the admissibility of evidence of another offense as rebuttal testimony.

■ There can be no doubt that the general rule prohibits evidence of an accused's involvement in another crime. Likewise, it is settled that where a defendant takes the stand and, for purposes of impeachment, is cross-examined on collateral matters, his answers to such inquiries are conclusive, and they may not be the subject of rebuttal testimony. The above cases, cited by appellant, support these general propositions.

The state relies upon exceptions to these rules, laid down in *State v. King,* 342 Mo. 975, 119 S.W.2d 277 (1938) and *State v. Wilson,* 320 S.W.2d 525 (Mo.1959). King involved a statutory rape charge against a school attendant in which the defendant, testifying on direct examination, stated, in effect, that he did not have sexual intercourse with any of the girl students. On cross-examination, he was asked about correspondence between himself and another girl student, indicating such relation with her. He denied such relation and the correspondence between the defendant and the second girl was introduced in evidence by the state as impeachment. On appeal, defendant contended that the evidence of another offense was improperly admitted and also asserted that the state was bound by his replies to the questions on this collateral

matter. In holding that the introduction of the letters in evidence was not error, the court stated (119 S.W.2d 283–284):

"* * * Undoubtedly, where there is evidence to support a charge that the accused committed statutory rape, proof that he had recently theretofore perpetrated the same or other like degenerate acts upon other female children of tender years would be corroborative, just as proof of his prior good character would tend to repel the charge. And although such proof cannot be introduced by the State to help out its case in chief, yet we think it should be allowed to do so in rebuttal when the defense initially has made a showing on that question. Certainly the accused ought not to be permitted to tender the issue and gain the benefit of so doing, and then contend there is no such issue, or that the question is immaterial, when the prosecution offers to meet it. It would be like letting the defendant put his character in issue and then denying to the State the right to introduce evidence to the contrary. Owing to the difference in its facts, we shall not go so far as to say here that *State v. Buxton, supra,* 324 Mo. 78, loc. cit. 85, 22 S.W.2d 635, loc. cit. 638(4) should be overruled; but we do hold the decision is not authority on the question presented by this record, and that the trial court did not err in admitting the letters in evidence.

"The appellant further contends that when the assistant circuit attorney cross-examined him about his clandestine relations with the girl M. W. and their letter writing, in an effort to elicit from him discrediting admissions of guilt with respect to these collateral matters, the State was bound by his answers and could not introduce the letters to contradict him. That is the rule where the State injects the question into the case, *State v. Ansel,* Mo.Sup., Div. 2, 256 S.W. 762, 764(6); *State v. Bagby,* 338 Mo. 951, 964, 93 S.W.2d 241, 248(11). But where, as here, the defense tenders the issue the State has a right to meet it."

*State v. Wilson,* supra, was a sodomy prosecution in which the defendant on direct examination denied having committed

the act with the prosecuting witness or anyone else. On cross-examination, he reiterated this broad, general denial. The state was permitted, in rebuttal, to produce testimony of another person as to defendant's having committed the act upon him. The court followed *State v. King*, supra, in holding the admission of this evidence was not error.

■ There is one difference between those cases and the present one in that, in those cases, the broad, general denial occurred originally in the defendant's direct examination. Here, the sweeping denial occurred in cross-examination. However, it was volunteered, not a direct reply to a question posed by the prosecutor. In this situation, the *King* and *Wilson* exceptions to the general rules remain applicable. *United States v. Bell*, 165 U.S.App.D.C. 146, 506 F.2d 207 (1974), supports this conclusion. There a defendant charged with illegal sale of narcotics volunteered, on cross-examination, that he had never seen narcotics. The prosecution was permitted to produce evidence, in rebuttal, of another sale in which the defendant was involved. In holding this was not error, the court stated (506 F.2d 207, 214–215):

"In the instant case, Bell represented himself not only as an industrious businessman on Pier 1 merely to buy fish and chat with friends, but also as one who had never seen narcotics except on television, and consequently one who did not traffic in them. Evidence tending to show that Bell had previously transacted a sale of narcotics obviously bore a high degree of relevance to his credibility in disclaiming any acquaintance with narcotics. And since Bell's defense to the charges on trial was largely self asserted, the jury's need to accurately assess Bell's credibility was vital. Officer Miller's rebuttal testimony went no further than the necessities of meeting Bell's self-volunteered declaration of unfamiliarity with narcotics, and promised more than enough of a contribution to the cause of truth to outweigh the attendant risks."

■ It may be well to note that the rule of the *King* and *Wilson* cases is not universally applied. Wigmore is critical of the rule and cites cases in other jurisdictions reaching a contrary result. III A Wigmore on Evidence (Chadbourn Rev.) § 1007, p. 979 (1970). However, this court is obliged to follow the most recent pronouncement of the Supreme Court and *King* and *Wilson* are such. This court will not endeavor to fix the present status of earlier pronouncements in *State v. Buxton*, supra, distinguished in both *King* and *Wilson*, or *State v. Cox*, 263 S.W. 215 (Mo.1924). *King* and *Wilson* uphold the trial court's action in this case and the admission of the rebuttal testimony was not error.

Appellant presented the deposition of Susan V. Cole. The state lodged some general objection to the use of the deposition. It also objected specifically to a number of questions and answers and the trial court sustained a number of such objections. The defendant read portions of the deposition, above referred to. Then the defendant offered the entire deposition in evidence as an offer of proof of improper conduct on the part of Courtois. The offer of the entire deposition was rejected. Appellant now contends such ruling was error.

■ In advancing this assignment, appellant has made no effort to demonstrate that the state's objections, which the court sustained, to major portions of the deposition, were lacking in merit and that the trial court's ruling on any of them was erroneous. The offer of the deposition was in the form of an offer of proof. If any part of an offer of proof is inadequate, the entire offer fails. *Lott v. Kjar*, 378 S.W.2d 480, 483–484[1, 2] (Mo.1964).

■ Here, the trial court had previously determined an inadequacy of a large part of appellant's offer of proof. If he is to prevail here, he must demonstrate error in such rulings and he makes no effort whatsoever to do so. It is not the duty of this appellate court to go through the deposition for this purpose. The necessary conclusion is that no error has been demonstrated.

Appellant's final contention is that the trial court erred in overruling his motion to

dismiss because of illegal conduct of prosecution witnesses and informers. The motion alleged many instances of claimed illegal activity, largely on the part of Courtois. The great bulk of the allegations had nothing to do with the charge against appellant. In support of his claim of error, appellant cites only language in *Patty v. Board of Medical Examiners*, 9 Cal.3d 356, 107 Cal. Rptr. 473, 508 P.2d 1121 (1973), condemning entrapment by police officers. There is no question that entrapment is a valid defense to a criminal charge, but appellant did not rely on that defense here.

 Appellant has cited no authority holding that illegal activities by law enforcement officers, not related to the charge at hand, will be grounds for the dismissal of such charge. Insofar as the charges of illegal activity do relate to the charge at hand, evidence to such effect may be relied upon insofar as it might give rise to a legally recognized defense, such as entrapment, and insofar as such activities might be relevant on credibility issues. The novel contention that such activity is grounds for dismissal of the charge is rejected.

Judgment affirmed.

All concur.