STATE of Missouri, Respondent,

v.

Jeffery Craig CHARLES, Appellant.

No. KCD 29276.

Missouri Court of Appeals,
Kansas City District.

Oct. 2, 1978.

Application to Transfer Denied
Dec. 18, 1978.

Lee M. Nation, Kevin R. Locke, Asst. Public Defenders for the 16th Judicial Circuit, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Chief Counsel, Crim. Div., Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

SOMERVILLE, Presiding Judge.

Defendant was charged by a two count information with murder in the second degree (Sec. 559.020, RSMo 1969) and robbery in the first degree by means of a dangerous and deadly weapon (Sec. 560.120, RSMo 1969 and Sec. 560.135, RSMo Supp.1975). A jury found him guilty of both offenses and his punishment as to each was fixed at life imprisonment. The trial court ordered the life sentences to run concurrently.

Two points of error are presented by defendant on appeal: (1) Error on the part of the trial court in overruling defendant's motion to quash the jury panel because the automatic exemption given women from jury service resulted in a panel which was

not representative of a cross-section of society, all in violation of the Sixth Amendment to the Constitution of the United States; and (2) error on the part of the trial court in admitting into evidence, at the state's behest, a .38 caliber revolver and a .38 caliber cartridge which were wholly unrelated to any of the offenses for which defendant was standing trial, and in permitting the state to make repeated references thereto during closing argument.

As none of the points relied upon question the sufficiency of the evidence, the facts may be rather tersely summarized. During the twilight hours of February 28, 1976, two acquaintances of defendant were in the immediate vicinity of the checkout counter of a Seven-Eleven Store in Kansas City, Missouri. They testified that they observed defendant, armed with a handgun, approach the checkout counter and shoot the store employee who was in charge of the cash register. As the two acquaintances fled the store in fright, they observed defendant jumping over the counter where the cash register was located. One of the two persons acquainted with defendant testified that defendant later admitted to her that he took approximately $57.00 from the cash register. The store employee who had been in charge of the cash register died of a gunshot wound in the stomach. Defendant took the stand in his own behalf and vehemently denied that he committed the offenses in question. He testified that he was elsewhere at the crucial time in question and produced a number of witnesses who confirmed his alibi.

■ Defendant's first point, questioning the gender of the jury panel, virtually lends itself to a summary disposition. *State v. Duren*, 556 S.W.2d 11 (Mo. banc 1977), *State v. Lee*, 556 S.W.2d 25 (Mo. banc 1977), and *State v. Davis*, 556 S.W.2d 45 (Mo. banc 1977), heretofore concurrently decided by the Supreme Court of Missouri, ruled this very issue adversely to defendant. Defendant has not presented any statistical data which would suggest that the selection and composition of the jury panel in the instant case was substantially different from the selection and composition of those dealt with in *Duren, Lee* and *Davis*.

■ Defendant's second and final point, admission of and reference to prejudicial evidence, is not so easily resolved. In view of its procedural background, serious questions are raised concerning the inviolacy of jury verdicts in criminal cases vis-a-vis adherence to the rule of law in the administration of criminal justice. As originally noted, defendant took the stand in his own behalf. Before doing so he presented a number of alibi witnesses, three of whom, during cross-examination by the prosecutor, were asked if they "had ever known" defendant "to carry a gun". When defendant took the stand, like any other witness, he put his credibility in issue. On cross-examination the prosecutor asked him if he had previously been convicted of burglary, second degree, and defendant admitted that he had. Knowing that defendant had been arrested on December 12, 1975, for carrying a concealed weapon, and with that thought obviously in mind, the prosecutor then asked defendant if he ever had "possession of a handgun", which defendant denied. The prosecutor was acutely aware of the fact that the handgun which he was questioning defendant about was wholly unrelated to the offenses for which defendant was standing trial. In fact, the handgun which was the subject of the prosecutor's cross-examination was in the "property room" of the Kansas City Police Department on February 28, 1976, the date of the offenses for which defendant was standing trial. Moreover, there is not one iota of evidence in the record that defendant was ever convicted of carrying a concealed weapon, although the subsequent course of the prosecutor's cross-examination sought to erroneously imply otherwise. Defendant's negative answer to the prosecutor's inquiry as to whether he ever had "possession of a handgun" should have ended the matter as it is well established in this state that a cross-examiner is bound by a witness' answers to questions involving collateral offenses bearing solely upon the witness' credibility, and except for proof of criminal

convictions as prescribed by Sec. 491.050, RSMo 1969, the cross-examiner is precluded from offering contradictory evidence. *State v. Johnson,* 486 S.W.2d 491, 496 (Mo. 1972); *State v. Lee,* 486 S.W.2d 412, 414–15 (Mo.1972); *State v. Cox,* 263 S.W. 215, 219 (Mo.1924); and *State v. Diamond,* 532 S.W.2d 873, 875 (Mo.App.1976). Notwithstanding defendant's negative answer and existence of the well established principle mentioned, the prosecutor vigorously pressed defendant for specific details concerning an event occurring on December 12, 1975, which led to defendant's arrest for carrying a concealed weapon. Incongruous as it may sound, no objections were ever lodged by defense counsel to the highly improper line of questioning pursued by the prosecutor. Seizing upon this unexplainable inadvertence or tranquilization besetting defense counsel, the prosecutor pressed hard and long at the collateral and highly prejudicial issue which he had injected into the case, even to the extent of calling as the state's only rebuttal witness a police officer who testified as to events leading up to and including defendant's arrest on December 12, 1975, for carrying a concealed weapon. The police officer also testified that a .38 caliber cartridge was taken from defendant's "right trouser pocket" at the time of his arrest on December 12, 1975. Throughout the prosecutor's extended cross-examination of defendant concerning the handgun, defendant steadfastly denied any connection or involvement with it. At virtually the close of all the evidence, the state moved that the controversial handgun (a .38 caliber Smith and Wesson) and .38 caliber cartridge be admitted in evidence. Defense counsel's previous state of lethargy surrounding these totally foreign and unrelated exhibits was finally shaken and an objection was interposed that said exhibits were "irrelevant and immaterial to the case at hand" and that they constituted "attempted impeachment and totally collateral matter." The trial court overruled defense counsel's objection to the exhibits and the same were admitted in evidence. Anomalously, the weapon which caused the death of the Seven-Eleven Store employee was never offered or introduced in evidence. The only inkling as to the trial judge's rationale for admitting the handgun and cartridge which were wholly unrelated to the offenses for which defendant was being tried lies in the following statement which he concurrently made when he overruled defense counsel's objection to them: "I think it should be noted that this has been opened up a good deal by the testimony on the part of defense witnesses as to whether this defendant ever carried a gun." This statement can only have reference to three of defendant's alibi witnesses who were asked on cross-examination if they "had ever known him [defendant] to carry a gun." In each instance, the respective witnesses answered in the negative. Although defense counsel did not object to this line of questioning when pursued by the prosecutor during his cross-examination of defendant's alibi witnesses, the prosecutor nevertheless elicited the negative answers and it is difficult to perceive how defendant can be said to have "opened" the matter up, as implied by the trial judge.

■ Immediately prior to the state's closing argument defense counsel orally moved for "a protective order upon the State to enjoin them from using the evidence, the pistol or the bullet, which has been marked State's Exhibits Twenty-four and Twenty-five for the reason that they are irrelevant and immaterial to any issue in this case, highly prejudicial, only related to a collateral matter; and therefore, should not be used as evidence in the argument of this case." When asked what the state's position was, the prosecutor replied that "I intend to refer to them for the same reason they were introduced into evidence, to impeach the credibility of the defendant and the defendant's witnesses." In overruling defense counsel's motion for a "protective order", the trial court stated, inter alia, as follows: "I think it is possible that they are considerably more than collateral matters at this point, having been injected into the case by the examination on the part of the defendant into these areas. However, I believe—counsel, I shall not make an order

as requested—I think, however, counsel would be well advised, counsel for the State, to give serious consideration to minimizing what might be claimed to be any prejudicial effect. The Court has allowed them in evidence, and believes the ruling was correct, adheres to it, and will not direct counsel—however, there have been cases in which items have been in evidence that were somewhat borderline that their use in closing arguments and presentation throughout the trial to the jury caused complications. So I will leave it to the wide discretion, and wise discretion of the Prosecutor." The prosecutor accepted this invitation to exercise his "wide discretion, and wise discretion" by referring to the controversial handgun, sometimes directly and sometimes by innuendo, on nine separate occasions over defense counsel's objection during both phases of the state's closing argument. The thrust of the prosecutor's reference to the handgun is exemplified by two particular instances. After physically displaying the weapon to the jury, the prosecutor immediately argued to the jury as follows: "This gun which is in evidence is the one that this defendant said, 'Yeah. That is my gun, but the cops planted it on me. I never saw it until they picked it out of the bushes.'[1] It is cops against robbers. If you believe the police did that—if you believe the police did that, let him go. Don't shop in any Seven-Eleven Stores. I am telling you that the police did have an impact in this case. You have got to believe that they did plant that gun on him, if in fact Jeffery Charles is a believable witness; and if, in fact, the policeman is lying." Shortly afterwards, the prosecutor argued as follows: "Can you believe Jeffery Charles and those guys when we have proved that he does carry a gun. When after we have proved that he carries a gun, he tries to say the police planted it on him. And when after he says they planted it on him, we proved he had a bullet to that very gun in his right front pocket? Can you believe that? This is not believable." There is no escape from the conclusion that the state persistently attempted to convey to the jury that defendant, notwithstanding his denial and lack of a conviction by plea or trial, was guilty of carrying a concealed weapon. Doing so was wholly inconsistent with the strick admonishment voiced by the court in *State v. Lee*, 486 S.W.2d 412, 414 (Mo.1972), citing *State v. Spray*, 174 Mo. 569, 576, 74 S.W. 846, 848 (1903), that "[t]he state cannot prove any crime not alleged, either as foundation for a separate punishment or as aiding the proofs that . . . [defendant] is guilty of the crime charged, even though he has put his character in issue."

The state attempts to vindicate admission of the objectionable exhibits into evidence, and the prosecutor's rampant and unbridled reference to them during closing argument, on two grounds. The state appears to argue that it was justified in initially questioning defendant about having previously possessed a handgun (carrying a concealed weapon) under authority of a line of cases in this state holding that the credibility of a witness (including an accused who takes the stand in his own behalf) may be attacked not only by making inquiry as to previous criminal convictions but also by asking whether or not he committed or admits that he committed a specific crime. The following are illustrative of the line of cases just mentioned. *State v. Foster*, 349 S.W.2d 922, 925 (Mo.1961); *State v. Summers*, 506 S.W.2d 67, 73 (Mo.App.1974); and *State v. Williams*, 492 S.W.2d 1, 6 (Mo.App.1973). The state tangentially argues that its right to initially question defendant about having previously carried a concealed weapon, coupled with defendant's denial that he had done so, opened the door for the extensive, in depth interrogation of defendant with respect thereto, the calling of the police officer who arrested defendant for carrying a concealed weapon as a rebuttal witness, and the admission of the handgun and cartridge as exhibits in the case. This highly convoluted argument does violence to the firmly established rule in this state that a cross-examiner is bound by a witness' an-

---

1. This statement attributed to defendant is not borne out by the record in all respects.

swers to questions involving collateral criminal offenses bearing solely upon the witness's credibility and, except for the right to prove prior convictions as prescribed in Sec. 491.050, supra, the cross-examiner is precluded from offering contradictory evidence. *State v. Johnson,* supra; *State v. Lee,* supra; *State v. Cox,* supra; and *State v. Diamond,* supra.

Next, the state argues that the handgun and cartridge were properly admitted into evidence as exhibits, and that the prosecutor was free of any restraint or limitations regarding reference to them during closing argument, because defendant waived any right to presently object thereto by reason of his failure to object to the controversial subject matter to which they related when it was first opened up on cross-examination.

■ Disposition of defendant's second and final point on the state's theory of waiver would require this court to indirectly condone and stamp with approval a trial which in many respects was the very antithesis of a fair trial. Without being hyperbolic, this result was primarily brought about by the state's unrestrained zeal to prosecute a heinous offense and an indifferent or tranquil attitude on the part of defense counsel which delayed any objection to certain highly prejudicial and otherwise inadmissible evidence until after the prosecutor relentlessly paraded it before the jury during cross-examination and on rebuttal. The effect of defense counsel's delay in lodging an objection now becomes the focal point of this case. The Supreme Court of this state recognized in *Smith v. Sovereign Camp of Woodmen of the World,* 179 Mo. 119, 77 S.W. 862, 866 (1903), and held in *State ex rel. State Highway Commission v. Young,* 324 Mo. 277, 23 S.W.2d 130, 133–34 (1929), that the admission of improper testimony without objection did not render the subsequent admission of like testimony over objection proper, and cognately, that an objecting party was not precluded from objecting to subsequent testimony on the theory that he waived his right to do so by failing to object when objectionable testimony of like effect was first adduced. See

also *Carrel v. Wilkerson,* 507 S.W.2d 82, 87 (Mo.App.1974), applying the same principle to improper argument of counsel. No reason comes to mind why this rule or principle should not apply with equal vigor in criminal cases, especially ones involving procedural and testimonial events comparable to those in the instant case. As a matter of fact if sound reasons exist for holding such a rule or principle applicable in civil cases, even more compelling reasons exist for holding it applicable in criminal cases where man's most precious asset, liberty, is at stake. Lethal weapons completely unrelated to and unconnected with the criminal offense for which an accused is standing trial have a ring of prejudice seldom attached to other demonstrative evidence, and the appellate courts of this state have been quick to brand their admission into evidence, and any display of or reference to them during closing argument, as prejudicial error. *State v. Holbert,* 416 S.W.2d 129 (Mo.1967); *State v. Smith,* 357 Mo. 467, 209 S.W.2d 138 (1948); *State v. Wynne,* 353 Mo. 276, 182 S.W.2d 294 (1944); and *State v. Williams,* 543 S.W.2d 563 (Mo.App.1976).

Arrest and guilt are not synonymous. Evidence that defendant was arrested for carrying a concealed weapon and admission of the lethal weapon he purportedly concealed did not prove his guilt or innocence of the murder or robbery charge for which he was standing trial, his strength or lack of character, or any propensity on his part for regard or disregard of the truth. To the contrary, they injected a totally false issue into the case which every natural instinct says was highly prejudicial to defendant's basic and inalienable right, guilty or innocent, to the rudiments of a fair trial. Pragmatically viewed, defendant was subjected to a trial within a trial, one of which was unsupported by any formal charge and which, at best, was predicated on nothing more than a tactical advantage sought by the state. Defense counsel's unexplained lapse in not objecting to highly prejudicial and legally inadmissible evidence of the same general tenor as the controversial exhibits was no antidote to the state's inundation of the case with prejudice in almost unheard of proportions.

■ Although "harmless error" is frequently seized upon as a panacea for the improper admission of evidence, the exhibits in question cannot be lightly brushed off on that basis. This court firmly subscribes to the dual proposition that error associated with the improper admission of evidence should never be declared harmless unless it can be said to be so without question, and that in order to declare so the record should demonstrate that the jury disregarded or was uninfluenced by the improper evidence. *State v. Degraffenreid,* 477 S.W.2d 57 (Mo. banc 1972); *State v. Wynne,* supra; and *State v. Garrett,* 564 S.W.2d 347 (Mo.App. 1978). After carefully reviewing the record in the instant case it cannot be said "without question" that the jury disregarded or was uninfluenced by the improperly admitted exhibits, thus rendering their admission nothing more than harmless error. Cases in this state involving improper admission or reference to lethal weapons wholly unrelated to an offense for which an accused is standing trial reveal a rather consistent pattern of reversal because of their propensity for prejudice, and they cautiously avoid sanctioning the admission of such lethal weapons on the theory of harmless error. *State v. Holbert,* supra; *State v. Smith,* supra; *State v. Wynne,* supra; and *State v. Williams,* supra. The controversial exhibits in the instant case tended to imply that defendant had ready access to handguns and was of a violent nature, and for those reasons his testimony and that of his corroborating witnesses with respect to his alibi defense was unworthy of belief. So construed, the improperly admitted exhibits impinged on defendant's alibi defense and their admission appears to fall within the condemnatory bounds of a general principle espoused by the Texas courts that reversible error is committed by the admission of improper evidence which impinges on a defense interposed by an accused. *Mitchell v. State,* 116 Tex.Cr.R. 249, 32 S.W.2d 199 (1930); and *McLendon v. State,* 101 Tex. Cr.R. 663, 276 S.W. 431 (App.1925). *State v. Richards,* 334 Mo. 485, 67 S.W.2d 58 (1933), although failing in so many words to clearly delineate such as a recognized principle as the Texas courts have done, nevertheless appears to subscribe to and reach the same result.

■ The brutal, senseless murder that was inflicted upon the employee of the Seven-Eleven Store repels every decent instinct possessed by mankind. By reason of the plethora of substantial evidence introduced by the state in support of its burden of proving defendant guilty beyond a reasonable doubt of both charges, it is incomprehensible why the state seized upon and relentlessly paraded before the jury the highly prejudicial and inadmissible evidence in question. Defense counsel's unexplained lethargy in lodging an objection is, at best, an incomplete answer. In view of the overwhelming abundance of legally admissible evidence to sustain the state's burden of proof, coupled with the brutal and senseless nature of the homicide which was perpetrated, this court has had to steel itself in order to resist the common temptation of attempting to justify or excuse the error precipitated and repeatedly compounded by the state. To succumb to this temptation is an entirely different matter. To do so would put this court in the egregious position of assessing the credibility of witnesses it neither saw nor heard, and then saying to the jury that their assessment of defendant's credibility, and that of his alibi witnesses, as a matter of law, was impervious, notwithstanding the prejudicial atmosphere in which their credibility had to be assessed. The scope and effect of such prejudice knows no accurate measure. For this reason efforts to attack the credibility of an accused by attempting to prove collateral criminal offenses never admitted or for which there was no conviction, and by the admission of lethal weapons totally foreign to the offense for which an accused is standing trial, have wisely been prohibited and branded as reversible error.

Courts are frequently tempted to suspend or abandon the rule of law, particularly so when an especially brutal and senseless offense is involved and evidence of guilt is overwhelming. Courts which yield to this temptation must do so with an awareness

that they are substituting the rule of expediency frequently indulged in the streets for the rule of law which they have solemnly sworn to uphold, and they must be prepared to live with the fact that suspension or abandonment of the rule of law in one case establishes a precedent for doing so in subsequent cases. They must also face the reality that society as a whole is the ultimate loser when the rule of law gives way to the rule of expediency. On balance, a new trial is a small price to pay for preserving the integrity of a fair trial. There are times when cases must be retried in order to maintain the egalitarian purity of the rule of law. This is such a time.

Both judgments are reversed and both causes are remanded for a new trial.

All concur.