STATE of Missouri,
Plaintiff-Respondent,

v.

Anthony DUNLAP,
Defendant-Appellant.

No. 49419.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 28, 1986.

Motion for Rehearing and/or Transfer
Denied March 11, 1986.

Application to Transfer
Denied April 15, 1986.

Henry Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

Mary Elise Burnett, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant was charged with two counts of assault in the first degree. Under Count I he was charged with shooting his wife and under Count II he was charged with stabbing his three year old stepson. The jury found defendant guilty under both counts and assessed punishment at twenty years imprisonment under Count I and twenty-five years under Count II. The court sentenced defendant in accordance with the verdict of the jury, the sentences to run concurrently. Defendant appeals. We affirm.

At the time of the offense defendant lived in an upstairs flat with his wife of one and one half years, Pamela Dunlap, her three year old child, Nesby Moore IV, and Pamela's teenage cousin Kevin Labriado. Huddy Woods lived in the apartment below them.

According to the testimony of Pamela Dunlap and Kevin Labriado, defendant became angry that morning, upon finding that Kevin was wearing defendant's pants. He ordered Kevin to take off his pants, and punched him in the face and chest. He awakened his wife, saying "Kevin has gotten into my clothes and I'm not going to have this anymore." She walked into the living room, while defendant stood in the hallway saying that he had had enough, and that Kevin would have to leave the house. Defendant appeared to be "high" on drugs and "in hysterics." Earlier that morning he had been standing in bed, singing, dancing, and saying that he had seen God, that this was the end of the world, and that they were all going to hell. He had been smoking marijuana soaked with PCP on the previous night. Pamela told Kevin to call defendant's mother, and went to her bedroom to get money for the phone call. Defendant entered the bedroom, pulled his pistol from under the mattress, and aimed at her. As she ran from the room she heard the trigger click twice. Kevin also ran, reaching the backstairs ahead of her. Defendant fired four shots as they ran downstairs, hitting Pamela, who blacked out on the steps. Kevin escaped unscathed. When Pamela regained consciousness she found defendant sitting beside her, holding Nesby, his stepson. He said "I have gotten whacked. I done killed my whole family." At her request, defendant let Nesby go, and she saw the baby climb upstairs.

Huddy Woods, defendant's neighbor, testified that he heard four shots, and saw Kevin run by. Defendant then burst into his kitchen saying, "I done messed up. What am I going to do." He told Woods to kill him. Woods refused, whereupon defendant grabbed a carving fork and stabbed himself in the abdomen. Defendant then ran back upstairs. Woods called the police, who arrived shortly thereafter. The police found defendant standing in his apartment, carrying Nesby. He said that he had "messed up" and killed his family. Nesby had been stabbed in the abdomen. The police found Pamela lying on the backstairs, yelling for help. A loaded rifle belonging to defendant was found on the backstairs. Also recovered from the apartment was defendant's revolver, from which

five rounds had been fired, and a box containing marijuana.

Defendant testified that on the night preceding the incident he and his wife were smoking marijuana prepared with a half ounce bottle of PCP. He smoked more than his usual quantity, sharing two "joints" with his wife, and then smoking four "joints" alone as he watched television. He remembers nothing of what happened after that point. He first learned of the incident when he awoke in the hospital.

The defense also called a psychologist, Dr. Michael Armour, who performed a court-ordered mental evaluation of defendant based on an interview, the police report of the incident, and a social worker's follow-up interview. Armour testified that when taken in quantity, the drug Phencyclidine (a/k/a PCP, whack, angel dust) could produce hallucinations or delusions, and paranoid, impulsive, and sometimes violent behavior. Defendant told Armour that he normally smoked one "stick" of marijuana soaked with PCP per day. Armour determined that defendant was suffering from a mental disease or defect, in that he was temporarily psychotic at the time of the crime, due to his ingestion of the drug. Armour concluded that he was unable to conform his conduct to the requirements of the law, or to appreciate the nature, quality, or wrongfulness of his actions.

Defendant asserts four grounds for reversal. He contends that the court erred in: (1) admitting rebuttal evidence concerning defendant's prior arrests; (2) submitting verdict directing instructions which included a general converse, although the defense of mental disease or defect excluding responsibility was used; (3) submitting verdict directing instructions which did not cross-reference the instruction on the defense of intoxication; and (4) failing to instruct the jury to disregard certain remarks made during closing argument.

In defendant's first point on appeal he asserts that:

The trial court erred by overruling appellant's objections to the state's rebuttal evidence of the records of his prior arrests on charges of assault in the first degree and unlawful use of a weapon because evidence of arrests was irrelevant to any issue in the case, inadmissible to impeach appellant's credibility, and constituted evidence of an unrelated crime.

■ Defendant is correct in asserting that as a general rule it is impermissible to impeach the credibility of a witness by inquiring into prior arrests. *State v. Johnson*, 586 S.W.2d 808, 809 (Mo.App.1979). Defendant admits, however, that his counsel asked the question, "Do you have a criminal record, Tony?" and that his response, "No, I don't," opened the door to cross-examination on this issue. Therefore, he makes no objection to the cross-examination as to his prior arrests. He contends, however, that this being a collateral issue, the state was bound by his responses on cross that he had not been arrested on charges of assault in the first degree and the unlawful use of a weapon, and that admission of rebuttal testimony tending to disprove these statements constituted error.

■ Both sides agree that if a collateral issue is brought up for the first time by the state, it is bound by the defendant's answers. *See State v. Ballard*, 657 S.W.2d 302, 306 (Mo.App.1983). However, where defendant introduces the issue of his criminal record, and upon cross-examination denies previous arrests, we conclude that the state may produce rebuttal evidence to impeach defendant's denial.

An excellent analysis of the law on this issue may be found in *State v. Panter*, 536 S.W.2d 481 (Mo.App.1976). In an opinion authored by Judge Welborn, the court stated:

There can be no doubt that the general rule prohibits evidence of an accused's involvement in another crime. Likewise, it is settled that where a defendant takes the stand and, for purposes of impeachment, is cross-examined on collateral matters, his answers to such inquiries

are conclusive, and they may not be the subject of rebuttal testimony.

*Id.* at 485.

However, the opinion then examined the Missouri Supreme Court cases of *State v. King,* 342 Mo. 975, 119 S.W.2d 277 (1938) and *State v. Wilson,* 320 S.W.2d 525 (Mo. 1959), which carved out an exception to the rule on rebuttal testimony for cases in which the defendant first introduces the collateral issue on direct examination. Extending this exception to cases in which the defendant volunteers information on a collateral issue during cross examination, the court said:

> It may be well to note that the rule of the *King* and *Wilson* cases is not universally applied. Wigmore is critical of the rule and cites cases in other jurisdictions reaching a contrary result. III A Wigmore on Evidence (Chadbourn Rev.) § 1007, p. 979 (1970). However, this court is obliged to follow the most recent pronouncement of the Supreme Court and *King* and *Wilson* are such.

*State v. Panter,* 536 S.W.2d at 486.

Our Court considered the admissibility of rebuttal testimony on a collateral issue in *State v. Cheesebrew,* 575 S.W.2d 218 (Mo. App.1978). Judge Stewart, speaking for our Court, stated:

> It is the rule in Missouri that when a defendant in a criminal trial is cross examined with respect to a collateral matter for purposes of impeachment "his answers ... are conclusive and .. may not be the subject of rebuttal testimony". *State v. Panter,* 536 S.W.2d 481, 485 (Mo.App.1976). When a collateral issue is first tendered by the defense in direct examination or is volunteered on cross examination it becomes a proper subject for rebuttal. *State v. King,* 342 Mo. 975, 119 S.W.2d 277 (1938); *State v. Panter, supra.*

*Id.* at 223.

Shortly after our decision in *Cheesebrew,* the Supreme Court of Missouri handed down an opinion regarding the limits of cross-examination on collateral issues in *State v. Dunn,* 577 S.W.2d 649, 653 (Mo.

banc 1979). However, our review of *Dunn* reveals nothing that affects the exception previously announced in *King* and *Wilson,* followed by the Western District in *Panter,* and by our court in *Cheesebrew.*

Defendant principally relies on our case of *State v. Clayburne,* 592 S.W.2d 282 (Mo.App.1979). In *Clayburne,* defendant stated on direct examination that he did not have a gun during the evening in question, *nor did he own a gun.* On cross-examination defendant stated "correct" when asked whether he *"had never owned* a gun" and *"had never had* a gun before." The prosecutor then questioned him about a previous occasion on which he had a gun in his possession, which he denied. The state was then permitted to introduce rebuttal testimony on the issue of prior gun possession. It is evident that on direct examination defendant raised the issue of gun ownership. However, only on cross-examination was the issue of prior possession raised. Thus, the state was bound by defendant's answer, and rebuttal evidence on that issue was improper.

Defendant relies on the following language in *Clayburne* to support his position. We stated:

> Even if defendant "opened the door" on direct examination, the State was bound by defendant's answer that he had not illegally possessed a gun on a prior occasion, because such possession had not resulted in a conviction. At that point the inquiry should have stopped. The prosecutor was remiss in pressing for further details concerning a gun which had no relevance to the offense charged.
>
> The error was then compounded by the State's introduction of rebuttal evidence on the prior gun possession. Section 491.050 RSMo. 1969. *State v. Charles,* 572 S.W.2d 193, 195–196 (Mo.App.1978).

*Id.* at 284.

That language is contrary to our holding in *Cheesebrew* and not in accordance with the law as announced by the Supreme Court in *King* and *Wilson.* We reaffirm our hold-

ing in *Cheesebrew.* That part of the opinion in *Clayburne* which is inconsistent with *Cheesebrew* is overruled.

Defendant also relies on the Western District case of *State v. Charles,* 572 S.W.2d 193 (Mo.App.1978), which was handed down shortly before our case of *State v. Cheesebrew.* In *Charles,* the appeals court reversed, on the basis of repeated questioning by the prosecutor regarding the specific details leading to defendant's arrest for carrying a concealed weapon, and the introduction of the gun as rebuttal evidence. However, the court specifically found that these matters had not been initially raised by the defendant.

The rule which permits rebuttal testimony in situations where the defendant has himself raised a collateral issue is fundamentally necessary, and in no way unfair to the defendant. Under a contrary rule, a defendant would be free to raise the issue of his good character, state that he had never been arrested or in trouble, and then simply deny any questions asked on cross-examination, knowing that the state would be bound by his answers. The court did not err in admitting rebuttal evidence of defendant's prior arrests. It follows that the state's references to the arrests in closing argument did not constitute error.

■ Defendant asserts that the trial court's failure to omit the general converse in verdict-directing Instructions No. 7 and No. 8 was error in that they deviated from MAI–CR2d 2.30 and the Notes on Use, which require the general converse to be eliminated where the defense of mental disease or defect excluding responsibility is used. Note 2(c) of the Notes on Use of MAI–CR2d specifically requires that if a court instructs on a defense of mental disease or defect excluding responsibility the general converse be excluded. Here the court submitted the instruction on mental disease or defect in Instructions No. 10 and No. 11, which were patterned after MAI–CR2d 2.33. Instruction No. 10 provides as follows:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt that the defendant committed the conduct charged against him, you will then decide whether or not at that time he had a mental disease or defect excluding responsibility.

If you find and believe by the greater weight of the credible evidence:

First, that at the time of the conduct charged against the defendant he had a mental disease or defect, and

Second, that as a result of it he did not know or appreciate the nature, quality or wrongfulness of his conduct, or that if he did, he was incapable of conforming his conduct to the requirements of law.

then you must find the defendant not guilty under Count I by reason of mental disease or defect excluding responsibility.

Instruction No. 11 uses identical language on the burden of proof. Verdict directing Instructions No. 7 and No. 8, which failed to exclude the general converse, were cross-referenced to Instructions No. 10 and No. 11, respectively. Instruction No. 7 read in relevant part:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

That ... the defendant knowingly caused serious physical injury to Pamela Dunlap by shooting at her, then you will find the defendant guilty under Count I of assault in the first degree, unless you find and believe from the greater weight of the evidence that the defendant is not guilty by reason of a mental disease or defect excluding responsibility as submitted in Instruction No. 10.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Identical language on the burden of proof appeared in Instruction No. 8.

The thrust of defendant's argument is that the inclusion of two different burdens

of proof in the instructions led to jury confusion on the correct burden of proof for the insanity defense. The jury may have applied the "beyond a reasonable doubt" standard of proof, although defendant was only required to prove a mental defect excluding responsibility by the "greater weight of the evidence." In almost identical circumstances in *State v. McIlvoy,* 629 S.W.2d 333, 338 (Mo. banc 1982), the Missouri Supreme Court found no prejudice to defendant. After having reviewed the instructions as a whole,[1] we do not believe that the jury was misled in regard to the burden of proof on the insanity defense.

■ Defendant also complains that the court failed to include a cross-reference to the instruction on the defense of intoxication in its verdict directing Instructions No. 7 and 8. Defendant offered, and the trial court submitted, an instruction on intoxication patterned after MAI–CR2d 3.30.-1. Paragraph 6 of the Notes on Use under 3.30.1 provides that an intoxicated or drugged condition is a "special negative defense" and that "if MAI–CR 3.30 is given, the verdict directing instruction must contain a paragraph cross-referencing to MAI–CR 3.30." We note that the intoxication instruction cross-referenced to verdict directors No. 7 and 8. Nevertheless, this does not meet the requirement set out in 3.30.1. As stated in *State v. McClure,* 632 S.W.2d 314, 317 (Mo.App.1982):

> The state contends that there was no prejudice to defendant as the intoxication defense instruction cross-referenced the verdict director. We think there is logic in the state's position but if we so held we would in effect be eliminating the cross-reference required in the verdict director by Note 6 of MAI–CR2d 3.30.1. If the reference in 3.30.1 to the verdict director was sufficient, then there would be no reason to require a reference in the verdict director to 3.30.1.

■ Defendant admits, however, that this issue was not preserved for review.

Consequently, our review is limited to a determination of whether this ommission constituted plain error. *See* Rule 29.12(b). We note that defense counsel referred to defendant's drugged condition at numerous points during closing argument. In one instance counsel stated:

> There's an instruction there that says, "if you find the person was in a drugged condition to that point that he did not know what he was doing, then you must find that person not guilty." Now, it says: "If you are not aware of what you were doing, it is the law—drugged condition prevented him from knowing what he was doing, he's not guilty of anything".

Upon consideration of the instructions as a whole and defense counsel's argument to the jury, we find that no manifest injustice resulted.

■ Defendant's final point concerns the court's denial of defendant's request that it instruct the jury to disregard remarks made during closing argument, naming notorious criminals whom the prosecutor argued were "bizarre" but not crazy. The relevant portion of argument is as follows:

> MR. AUTREY: And he says that the crime was bizarre. You're doggone right, it was a bizarre crime. That's right, it was bizarre. Anytime you try to kill somebody, that's bizarre. It doesn't mean you have a mental defect or disease. Charlie Manson is bizarre. He ain't crazy.
>
> MR. CAHILL: Objection, Your Honor. That's irrelevant.
>
> THE COURT: Sustained.
>
> MR. AUTREY: John Wayne Gaysee is bizarre, he ain't crazy.
>
> MR. CAHILL: Objection, Your Honor.
>
> THE COURT: Sustained.
>
> MR. AUTREY: Moses Young is crazy, he ain't bizarre.
>
> MR. CAHILL: Objection, and ask that the jury be instructed to disregard that line of argument.

---

1. We also note that on numerous occasions during argument both counsel for the state and defense counsel clearly described the proper burden of proof on this issue.

THE COURT: I'm going to instruct Mr. Autrey to abandon that argument. Here, the court felt that defense counsel's objection was proper and sustained it. When the prosecutor continued to pursue this line of argument, the court sustained two more objections. Upon defendant's request that the court admonish the jury to disregard the statements, the court, in the presence of the jury, instructed counsel to abandon that argument. Defendant made no request for a mistrial. We rule this point against defendant.

Judgment affirmed.

DOWD, P.J., and CRIST, J., concur.