**STATE of Missouri, Plaintiff–Respondent,**

v.

**Kenny V. COFIELD, Defendant–Appellant.**

No. 24909.

Missouri Court of Appeals, Southern District, Division One.

Jan. 30, 2003.

Ellen H. Flottman, Assistant State Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Joel A. Block, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

Kenny V. Cofield ("Appellant") was charged with three counts of the class C felony [1] of child molestation in the first degree, a violation of Section 566.067,[2] one count of the class A misdemeanor of sexual misconduct in the first degree, a violation of Section 566.090, and one count of the class B misdemeanor of sexual misconduct in the second degree, a violation of Section 566.093. Following trial by jury, Appellant was acquitted of the sexual misconduct charges and found guilty of all three counts of first degree child molestation. He was sentenced, per the jury's recommendation, to seven years imprisonment on each of the three counts, said sentences to run consecutively. This appeal follows, with Appellant claiming the trial court abused its discretion in admitting, over Appellant's objections, physical and testimonial evidence concerning a replica antique handgun owned by Appellant. We affirm.

Considered in the light most favorable to the verdicts, the evidence adduced at trial established the following. From April 2000 to May 2000, Appellant lived with his sister Wanda, her husband John and their children, fourteen-year-old J.C., eight-year-old M.C. and T.J., an infant, at their home in Springfield, Missouri. Appellant's relocation was a result of Wanda's desire to establish a personal relationship with her siblings, all of whom had been raised in separate foster homes as children.

During Appellant's brief tenure in Wanda's home, he slept and stored his belongings in a downstairs family room. As time passed, tensions grew within the household, with Appellant contributing to the difficulties in the home by frequently drinking alcohol, which Appellant admitted caused him to become verbally and physically abusive, and by failing to maintain consistent employment.

---

1. Effective August 28, 2000, the legislature changed the classification of child molestation in the first degree from a class C felony to a class B felony. It also modified the maximum age of the victim of that crime from twelve years to fourteen years. As the underlying events and subsequent filing of charges occurred prior to August 28, 2000, the prior classifications were properly applied below.

2. References to statutes are to RSMo (2000) unless otherwise indicated.

Over the course of his visit, Appellant sexually molested M.C. on at least three separate occasions. The first time, M.C. was watching television with Appellant in the family room and began coughing. Appellant told her she could lie on his bed and got her a drink of water. Around 6:00 A.M., M.C. awoke to find Appellant rubbing her with his hand "where you go up your legs" and on her chest. Appellant threatened to kill M.C. if she revealed to anyone what he had done. The second time, M.C. fell asleep watching cartoons on television. When she awoke, she found that her pajama bottoms had been removed and Appellant was rubbing her vaginal area with his hand. The third time, Appellant touched her with "something other than his hands," putting his penis on M.C.'s "bottom" and "up" her legs.

On May 29, 2000, J.C.'s fifteenth birthday, J.C. reported to her mother that Appellant had inappropriately touched her breast and exposed himself to her the previous night.[3] Wanda immediately expelled Appellant from the house. A short time later, M.C. asked Wanda about Appellant's whereabouts. Wanda explained to M.C. that Appellant had given J.C. a "bad touch." Recognizing Wanda's terminology from her school's sexual abuse awareness program, M.C. told her mother that Appellant had touched her as well in an "icky way." She explained that she did not tell her mother immediately after Appellant touched her because Appellant showed her a gun and threatened to kill her if she revealed his actions.

On July 18, 2000, Wanda called the Missouri Division of Family Services ("DFS") hotline. A DFS investigator and a Greene County, Missouri deputy sheriff responded to Wanda's home on August 16, 2000 and interviewed both M.C. and J.C. in their mother's presence. Based on information obtained from that interview, the sheriff's department began a criminal investigation. DFS referred M.C. to the Child Advocacy Center in Springfield where she was interviewed and physically examined. The interview was videotaped and played for the jury. The physical examination revealed no indication of sexual abuse, which medical testimony established did not in any way disprove that M.C. had been molested.

In October 2001, while retrieving the family's Halloween decorations from the garage, Wanda's children discovered what they believed to be a gun. M.C. told Wanda at that time that she believed Appellant when he threatened to kill her because he had shown her that gun and told her that "he had guns." Wanda immediately called the sheriff's department and a deputy sheriff retrieved the gun. While the gun appeared to the deputy to be an authentic pistol, of antique origin but capable of lethal use, he later determined, after extensive examination, that it was a non-firing replica of a Civil War era "cap and ball pistol."

Appellant testified at trial that he did not inappropriately touch either J.C. or M.C. and speculated that their accusations were motivated by mutual dissatisfaction with him and the living arrangements imposed by his presence. The jury returned verdicts of guilty for three counts of first-degree child molestation and the trial court sentenced Appellant as described above.

In his sole point on appeal, Appellant claims the trial court abused its discretion in admitting, over Appellant's objections, physical and testimonial evidence concern-

---

**3.** J.C.'s accusations led to the two charges of misdemeanor sexual misconduct, of which Appellant was acquitted.

ing the replica antique handgun with which he threatened to kill M.C. Appellant alleges that to admit this evidence was to allow the State to imply he was a violent person, and that it had insufficient probative value to outweigh its unduly prejudicial effect, since he could not threaten his victim with what was actually a harmless instrument.

■ "Absent a clear abuse of discretion, [this court] will not interfere with a trial court's ruling on the admission or exclusion of evidence." *State v. Broussard*, 57 S.W.3d 902, 911 (Mo.App. S.D. 2001) (citing *State v. Nicklasson*, 967 S.W.2d 596, 619 (Mo. banc 1998)). An abuse of discretion occurs when "the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (citing *State v. Mathews*, 33 S.W.3d 658, 660 (Mo. App. S.D.2000)). Moreover, in cases concerning the admission or exclusion of evidence, we review "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Labbee*, 994 S.W.2d 66, 68 (Mo.App. S.D.(1999)) (quoting *State v. McMillin*, 783 S.W.2d 82, 98 (Mo. banc 1990)).

■ Notwithstanding the State's well-taken argument concerning the relevance of the replica gun to show Appellant's consciousness of guilt and the basis of M.C.'s reluctance to report Appellant's behavior, the issue of relevance is not before us, as Appellant appears to concede the gun's relevance.[4] Rather, Appellant alleges that any relevance the gun had was outweighed by its prejudicial effect on Appellant. Specifically, Appellant argues the jury "was likely to assume that [A]ppellant was more likely guilty since he possessed a gun[ ]" and that "[i]n countless cases, reaching back decades, courts have held that evidence of unrelated firearms is particularly prejudicial."

■ For the latter proposition, Appellant cites us to *State v. Smith*, 357 Mo. 467, 209 S.W.2d 138 (1948), *State v. Williams*, 543 S.W.2d 563 (Mo.App. K.C.Dist.1976) and *State v. Charles*, 572 S.W.2d 193 (Mo.App.K.C.Dist.1978). However, these cases are inapposite here in that *Smith*, *Williams* and *Charles* all involved the erroneous admission of gun-related evidence that was wholly irrelevant to the crimes charged in those cases. Such is not the case here, as the replica gun was used by Appellant to threaten his victim with death, thus evidencing an attempt to cover up his crime. "Conduct and declarations of a defendant that are relevant to show a consciousness of guilt or a desire to conceal the offense are admissible because they tend to establish the defendant's guilt of the charged crime." *State v. Barton*, 998 S.W.2d 19, 28 (Mo. banc 1999). *See also State v. White*, 870 S.W.2d 869, 875 (Mo.App. W.D.1993) (evidence showing the defendant threatened a witness admissible to show consciousness of guilt). Thus, while Appellant correctly states the law in arguing that evidence of *unrelated* firearms is unduly prejudicial, it is an argument that begs the question. The "firearm" here is not unrelated to the crimes of which Appellant was convicted and the law he recites under this argument is, therefore, unavailing.

Moreover, the undue prejudice found by the courts in *Smith*, *Williams* and *Charles* is lacking here for yet another obvious reason—the guns in those cases were

**4.** Appellant's point on appeal alleges not that the gun had no relevance at all but, rather, that it had "very little" probative value. His brief makes no reference to the issue of the gun's bare relevance, nor does it cite to any authority pertaining to the issue.

known by the juries to be real. Here, a sheriff's department detective testified that the supposed firearm seized from the victims' home was a non-firing replica and not a firearm capable of deadly use. Thus, whatever unduly inflammatory effect may have occurred in the cases cited by Appellant does not appear to be present here.

Here, the replica firearm was relevant because Appellant used it to threaten M.C. and cover up his crime. Given that relevance and the fact that the jury knew it not to be a real weapon capable of deadly use, its admission into evidence was not unduly prejudicial. We therefore cannot find an abuse of discretion in admitting evidence of the replica gun. Appellant's point is denied.

The judgment and sentence are affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.