STATE of Missouri, Respondent,

v.

Willie E. TYGART, Appellant.

No. KCD 27293.

Missouri Court of Appeals,
Kansas City District.

Dec. 8, 1975.

Sloan R. Wilson, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

SOMERVILLE, Presiding Judge.

Defendant was charged under the Second Offender Act with unlawful possession of

Lysergic Acid Diethylamide, commonly known as "LSD", a Schedule I controlled substance. Sections 195.017, 195.020, and 195.200, RSMo Supp.1973. He was found guilty by a jury as charged and the court, after making the requisite findings relative to the Second Offender Act, fixed his punishment at nine years confinement in the Department of Corrections. The matter is before this court on a timely appeal taken by defendant.

Defendant has not challenged the sufficiency of the evidence to sustain the guilty verdict and a fairly terse recitation of the evidence demonstrates why he has not done so.

During the afternoon of July 17, 1973, an officer (Harman) of the Kansas City, Missouri, Police Department received information from a reliable informant that defendant was driving a truck of a particular description in the vicinity of 41st and Oak Streets, in Kansas City, and was in possession of some "narcotics" and "weapons". Additionally, defendant was reported to be leaving for Kansas within the next thirty minutes. The police computer terminal disclosed the existence of two outstanding warrants for defendant's arrest for traffic violations. The information received from the informant and the existence of the outstanding warrants was made available to two officers (Lynch and Chapman) who subsequently apprehended defendant in his truck near the vicinity of 42nd and McGee Streets, Kansas City, Missouri.

Shortly after defendant was apprehended, Officer Harman arrived at the scene. Defendant was advised by the officers of the two outstanding warrants and was placed under arrest. At the scene defendant's person was searched by Officer Chapman. The search uncovered two small bottles on defendant's person containing approximately 150 "tabs" which appeared to the officers to be "narcotics". While still at

the scene of the arrest, Officer Lynch searched the truck defendant had been driving and found another bottle containing approximately 65 "tabs", which also appeared to the officers to be "narcotics".[1] Defendant was additionally placed under arrest at the scene for "possession of narcotics". Subsequent thereto, while still at the scene of his arrest, and after being given a "Miranda" warning, defendant, in response to a question asked by Officer Chapman, said with reference to the contents of the two bottles seized from his person, "It is LSD. Goes for $2.00 a hit." A subsequent chemical analysis of the contents of the three bottles respectively seized from defendant's person and the truck he was driving revealed that the "tabs" were Lysergic Acid Diethylamide, a Schedule I controlled substance.

Defendant raises but one issue on appeal—that the trial court erred in refusing to sustain various motions made by him for a mistrial predicated upon the state's injection before the jury of "crimes" other than the one for which he was standing trial. As hereinafter demonstrated, defendant assiduously pursued the collective aspects of the lone issue raised on appeal from the time the state made its opening statement, thence throughout the remaining course of the trial, and, as well, in his motion for a new trial.

The factual core of the single issue presented, as delineated by defendant in his brief, consists of the following sequential events.

During the state's opening statement, the assistant prosecuting attorney presenting the case said: "The evidence will be that after the defendant, Willie Earl Tygart, was placed under arrest . . . he was asked by one of the two patrolman what the two pill bottles contained, that were removed from his left front pocket; and the defendant freely admitted to the

---

1. On appeal defendant has not questioned the constitutionality of either of the searches or seizures mentioned.

officers that it was LSD, two, I think; and that he was selling it for $2.00 a pop or a sale." Defense counsel timely objected thereto on the ground that the latter portion of the state's opening statement improperly told the jury that defendant was guilty of selling narcotics, a crime totally unrelated to the one for which he was standing trial. The only relief sought by defense counsel was a request for the trial court to declare a mistrial. The record discloses that defense counsel studiously avoided requesting any relief short of a mistrial because the trial court, of its own volition, before denying the request to declare a mistrial, advised defense counsel that it would entertain an "appropriate motion" regarding the objectionable statement. Defense counsel declined to accept the trial court's invitation to move for some form of relief less drastic than declaration of a mistrial. Thus, the trial court was effectively precluded by defense counsel from considering any corrective action whatsoever short of a mistrial. A somewhat analogous situation confronted the court in *State v. Cuckovich*, 485 S.W.2d 16 (Mo. banc 1972), which involved a response by one of the state's witnesses which the accused claimed was prejudicial because it assailed his character. There, as here, the sole and only corrective relief sought by defense counsel was a request for a mistrial. In upholding the trial court's refusal to declare a mistrial the court in *Cuckovich*, l. c. 24, pungently stated: "We think it is significant that the only relief defendant sought was a mistrial. It is our view that he should have asked also that the statement be stricken and the jury ordered to disregard it. In that way the court could have considered action short of a mistrial." The court in *Cuckovich* noted, l. c. 24, as does this court, that a trial court occupies a position vastly superior to that of an appellate court for evaluating claimed prejudicial matters and the possibility of expunging them rather than resorting to the drastic measure of declaring a mistrial. In the instant case the trial court obviously con-

cluded that it was inappropriate to declare a mistrial because expurgatory relief existed to cure any objectionable features of the state's opening statement. In view of the nature of the matter complained of and defense counsel's declination to countenance any curative relief short of a mistrial, this court is unwilling to hold that the trial court abused its discretion in refusing to declare a mistrial at this juncture. For reasons later set forth herein, it is worthy of mention that the trial court, in denying defense counsel's request to declare a mistrial, noted, inter alia, that ". . . such evidence would have to do with the knowledge and nature of the substance that the defendant is charged with possession of at the time . . . ."

During the course of the state's direct examination of Officer Lynch, the state elicited that defendant, with reference to the contents of the two bottles removed from his person, stated in Lynch's presence at the scene of the arrest, "It is LSD. Goes for $2.00 a hit." Defense counsel objected thereto "on the basis that the prosecutor has adduced evidence of crimes not charged against the defendant." Defense counsel followed up his objection with a single claim for curative relief—a motion for a mistrial. Again, the trial court refused to declare a mistrial. Although all concerned apparently construed "Goes for $2.00 a hit" as meaning "I [defendant] am selling it [LSD] for $2.00 a hit", it appears equally susceptible of being construed as meaning "I [defendant] purchased it [LSD] for $2.00 a hit."

■ During *defense counsel's recross-examination* of Officer Harman, the record discloses the following questions asked to which the following answers were given:

"Q. Officer, did you have an opportunity to talk to the defendant at the station?

A. Yes, sir; I did.

Q. Did he tell you what he did for a living?

A. Yes, sir. He stated he pushed narcotics parttime; and I don't recall what else he said."

Defense counsel objected thereto on the ground that the answer to the last question constituted evidence of crimes other than the one for which defendant was being tried, and again limited his request for relief solely to declaration of a mistrial. The trial court again denied defense counsel's request to declare a mistrial. In refusing to accede to defense counsel's request for a mistrial on this occasion, the trial court (out of the presence of the jury) observed that defense counsel had "opened the door" and he could not find, as claimed by defense counsel, that Officer Harman "took an unfair opportunity to unload" on him. The record is totally devoid of any indication that Officer Harman was acting in bad faith or that he was intentionally bent on injecting prejudice into the case to the detriment of defendant. The record, at best, shows that Officer Harman gave a natural, spontaneous and wholly responsive answer to the precise question posed to him by defense counsel. Such being the case, defendant is in no position to presently drape the responsive answer with a charge of prejudicial error since he "invited" the complained of disclosure. As noted in *State v. Brown*, 463 S.W.2d 821, 823 (Mo.1971), when defense counsel "gets into deep water" because of a disclosure he himself invited on cross-examination "it will be his own fault." Any inclination of the trial court in the instant case to declare a mistrial was obviously dulled by the fact that counsel for defendant invited the complained of disclosure. This circumstance, coupled with the fact that the trial court was not presented with a choice of some form of corrective relief short of a mistrial, dulls any inclination on the part of this court to label the trial court with an abuse of discretion for not declaring a mistrial.

Lastly, during the state's closing argument two incidents of similar import occurred. The assistant prosecuting attorney in his closing argument contended before the jury that ". . . after being asked by Officer Lynch what these two bottles contained, you will recall his—Officer Chapman's testimony, defendant said 'They're LSD and they go for $2.00 a trip.' . . . or words to that effect; I'm sure you will remember—." Defense counsel objected thereto—"on the basis that the prosecutor has again told the jury that there may have been a sale of narcotics, which the defendant is not charged with"—and once again limited his request for relief to a mistrial which the trial court denied. Immediately after the trial court's ruling the prosecuting attorney argued to the jury as follows: "And after numerous questioning by Mr. Wilson, in cross-examination of Officer Harman, where he asked Officer Harman whether he questioned the defendant as to his occupation. I am sure that at the close of last night's evidence you will remember Officer Harman's answer that this defendant, Willie E. Tygart, gave: he said, 'Yes; I'm a parttime narcotics pusher.'" Again defense counsel lodged an objection, on the ground that the argument related to a crime or crimes other than the one which defendant was charged with, and his claim for relief was again relegated solely to a request for a mistrial. Consistent with its prior rulings, the trial court declined to declare a mistrial. At this point, however, the trial court, of its own volition, absent objection of any kind by defense counsel, orally instructed the jury as follows: "Ladies and gentlemen of the jury: You are instructed by the Court that this defendant is not charged with the sale of a controlled substance." Thereafter, the assistant prosecuting attorney continued the state's closing argument and, among other things, informed the jury that the "State does not wish to imply that he is charged with the sale; and as I said before, the Instruction Number 4 charges this defendant only with possession, knowing possession of LSD; . . . ."

Both defendant and the state, with unanimity, contend that ultimate disposition of

the single issue presented on appeal is controlled by a well settled principle of law obtaining in this state—evidence of separate and distinct crimes other than the one for which an accused is standing trial is inadmissible unless it has some "legitimate tendency" or "logical relevancy" to establish the accused's guilt of the crime for which he is being tried. *State v. Shilkett*, 356 Mo. 1081, 204 S.W.2d 920, 922–923 (1947); *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954); and *State v. Holbert*, 416 S.W.2d 129, 132 (Mo.1967). The cases just cited characterize evidence of certain extraneous crimes in certain given circumstances as "exceptions" to the obtaining rule. Defendant does not question the legal propriety of the evidentiary matters complained of being the subject of legitimate comment by the state in its opening statement and closing argument if, in fact they had some "legitimate tendency" or "logical relevancy" to establish defendant's guilt of the crime for which he was charged. However, the state and the defendant are polarized with respect to whether the controversial evidence and comments had a "legitimate tendency" or "logical relevancy" to establish defendant's guilt of possession of Lysergic Acid Diethylamide. Defendant implacably argues that evidence that he was engaged in the sale of narcotics, whether solicited by the state or inadvertently solicited by him, was both inadmissible and immune from comment by the state because (1) it had no "legitimate tendency" or "logical relevancy" to prove his guilt of possession of a controlled substance and (2) it did not fall within any of the recognized "exceptions" to the obtaining rule. With like implacability, the state argues otherwise.

Denominating the admissibility of certain extraneous crimes in given circumstances as "exceptions" to the obtaining rule is somewhat of a misnomer. What have been denominated as "exceptions" more appropriately lend themselves to being characterized as extraneous crimes that have a "legitimate tendency" or "logical relevancy" to

prove an accused's identity or some or all of the elements of proof of the crime for which he stands charged. A similar observation was made by Division One of this court in *State v. Randall*, Mo.App., 530 S.W.2d 407, handed down November 3, 1975.

■ With the above in mind, this court's attention now logically focuses on the scope and nature of proof relative to a charge of possession of a controlled substance in violation of Section 195.020, RSMo Supp.1973. The sufficiency of the proof necessary to sustain a conviction for actual or constructive possession of a proscribed controlled substance is tested by whether " 'the defendant was aware of the presence *and character of the particular substance, and was intentionally and consciously in possession of it.*' " (Emphasis added.) *State v. Young*, 427 S.W.2d 510, 513 (Mo.1968); and *State v. Burns*, 457 S.W.2d 721, 725 (Mo. 1970). MAI–CR No. 1410, given by the trial court in compliance with the mandate of Rule 20, required the jury, among other things, in order to find the defendant guilty as charged, to find and believe beyond a reasonable doubt "that defendant was aware of the character of the drug and intentionally and knowingly had it in his possession". This court encounters no difficulty in perceiving evidence of sales of narcotics by defendant, or evidence susceptible of being construed as sales of narcotics by defendant, as being fraught with a "legitimate tendency" or "logical relevancy" to show that defendant was aware of the "character" of the drug contained in the three bottles seized from him and that he "intentionally and knowingly had it in his possession".

Although never broached by defendant, evidence and comments restricted to defendant's acknowledgment that the "tabs" seized from him were LSD, standing alone, could conceivably be argued as adequate to show defendant's awareness of their "character" and that he "intentionally and knowingly had [them] in his possession", and

therefore evidence and comments regarding the sale of narcotics by defendant was cumulative and for this reason took on an aura of error it otherwise might not have had. Any qualms concerning this unbroached argument are effectively dissipated, however, when the undeniable "legitimate tendency" and "logical relevancy" of the complained of evidence and comments to prove and show the crime with which defendant was charged is viewed in conjunction with the total circumstances previously iterated surrounding each of the sequential events relied on by defendant. When so viewed, this court is unwilling to stigmatize the trial court's refusal to abort the trial as an abuse of discretion.

Judgment affirmed.

All concur.