STATE of Missouri,
Plaintiff-Respondent,

v.

James V. CHEESEBREW,
Defendant-Appellant.

No. 39149.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Nov. 7, 1978.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 15, 1978.

David A. Lang and Thomas E. Shipp, Jr., St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Daniel F. Lyman, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

STEWART, Presiding Judge.

Defendant was convicted of possession of marijuana, a Schedule I controlled substance, in excess of 35 grams in violation of § 195.020 and sentenced to a term of five years in the custody of the Missouri Department of Corrections to run consecutively with a sentence of five years for sale of a controlled substance.

For reversal defendant contends that the court erred in: (1) overruling a challenge for cause to three veniremen who indicated they would feel defendant was hiding something if he did not testify; (2) admitting testimony that marijuana had been seen in defendant's trailer one week before the raid; (3) admitting testimony that the defendant had told an undercover policeman one week before the raid that he would be in possession of more marijuana in the future; (4) admitting rebuttal testimony that the defendant had sold marijuana to an undercover policeman one week before the raid; (5) admitting a kitchen scale into evidence; (6) denying defendant's motion for a continuance; and (7) overruling defendant's motion to amend the record by changing defendant's sentences from two five-year terms to be served consecutively to two five-year terms to be served concurrently. We affirm.

Defendant, age 31, had been living in a two bedroom trailer located about three miles west of Malden, Missouri. Defendant's girl friend and Homer Carrington, age 19, were also living in the trailer in February and March of 1976.

On the evening of February 25, 1976, Trooper Moses of the Missouri State Highway Patrol, acting undercover, was admitted into defendant's trailer. There were six persons including Moses and defendant in the trailer. Most of them were smoking marijuana. Moses saw a bag of marijuana and was told by defendant that he was going to get a large quantity of marijuana in the near future.

On March 5, 1976, members of the Missouri Highway Patrol and the Dunklin County Sheriff's Department were admitted into defendant's trailer by Carrington pursuant to a search warrant. Approximately 17 lbs. of marijuana were discovered hidden throughout the trailer in the bedrooms, stereo speaker cabinets, a trash can, beer box and briefcase. Marijuana seeds were found in a prescription medicine bottle with Cheesebrew's name on it. A scale and some hashish pipes were also seized.

Cheesebrew was arrested when he returned to the trailer while the search was in progress. An information filed on March 23, 1976 charged defendant and Homer Carrington with possession of a Schedule I controlled substance in excess of 35 grams.[1]

Defendant does not question the sufficiency of the evidence to sustain the conviction. Further facts necessary to the disposition of the issues raised will be discussed as the issues arise.

Defendant complains that he was deprived of an impartial panel of veniremen because the court failed to sustain his challenges for cause to three members of the panel who responded by raising their hands to the following question:

"Is there anyone who, as you sit here now, being honest with yourself, when you get back in the jury room, if the defendant did not testify in this case, is there anyone who at least on a subconscious level or perhaps more openly would be thinking, well, why didn't the defendant take the stand; why didn't he testify; is he hiding something? Is there anyone who would be inclined to feel that way if the defendant did not testify in this case?"

He contends that the three jurors "indicated that they would be biased against the defendant if he did not testify."

█ It is well settled that defendant was entitled to a full panel of qualified veniremen before he made his peremptory challenges. *State v. Ransburg*, 540 S.W.2d 172 (Mo.App.1976). The determination as to whether a venireman is qualified rests in the discretion of the trial court and will not be disturbed except for an abuse of discretion. It must clearly appear from the evidence that the challenged venireman was in fact prejudiced. *State v. Johnson*, 534 S.W.2d 844, 846 (Mo.App.1976).

█ To place the issue in context we set out the paragraph that forms the basis of defendant's complaint and the paragraph immediately preceding:

"MR. SHIPP: After the Prosecution has given you their version of what happened, is there anyone who doesn't think they will be willing to hear the defense side of the story? As fair-minded citizens, is there anyone who wouldn't want to hear what my client had to say about the charges that are leveled against him?

"Is there anyone who, as you sit here now, being honest with yourself, when you get back in the jury room, if the defendant did not testify in this case, is there anyone who at least on a subconscious level or perhaps more openly would be thinking, well, why didn't the defendant take the stand; why didn't he testify; is he hiding something? Is there anyone who would be inclined to feel that way if the defendant did not testify in this case?

"[Hands were raised by Mrs. Farmer, Mrs. Newcomer and Mr. Masterson.]"

At this point defendant abandoned this line of questioning.

The paragraph which forms the basis for defendant's complaint contains a dissertation and three separate questions. Three jurors responded by raising their hands. We do not believe that the trial court was required to take this as an indication of bias and prejudice on the part of these jurors. We are unable to determine whether the jurors were responding to one or all of the questions in the affirmative or whether they were seeking further information as to the meaning of defendant's inquiries.

1. The cases were severed before the trial began. Carrington entered a plea of guilty after the severance.

The trial court, as it should, permitted counsel wide latitude to pursue all avenues of inquiry that might establish bias or prejudice on the part of the panel. The obligation is upon defendant to directly and plainly examine the veniremen so as to discover any disqualifying factors. *State v. Gaitan*, 442 S.W.2d 530 (Mo.1969). If counsel felt that the response of the three veniremen was indicative of bias and prejudice it was his obligation to require specific answers to clear unequivocal questions. See *Lemonds v. Holmes*, 241 Mo.App. 463, 236 S.W.2d 56, 62 (1951). This, defendant did not do in this case. Defendant committed the venire to the proposition that defendant did not have to prove his innocence; and that they would find him not guilty if there was a reasonable doubt.[2] We cannot say that the court abused its discretion in denying defendant's challenge of the three members of the panel.

If we were to assume that the gesture made by the three members of the panel was an affirmative response to the questions asked they would merely be indicating their "desire to have as much evidence and testimony as possible as an aid to arriving at a verdict" not that they had a closed mind and not that the "failure to testify is an admission of guilt." *State v. Ransburg*, 540 S.W.2d at page 174.

The case before us is distinguishable from *State v. Lovell*, 506 S.W.2d 441 (Mo. banc 1974) and *State v. Scott*, 482 S.W.2d 727 (Mo. banc 1972) relied upon by defendant. *Lovell* stands only for the proposition that the court must make its own determination of the qualification of a challenged venireman based on the facts elicited during the voir dire and that it may not defer to the venireman's judgment of his qualifications. In *Scott* one of the members of the panel said she would hold it against defendant if he did not testify. Another stated that in his opinion if the defendant were innocent he would be glad to testify. The voir dire in the case before us did not develop any disqualification of the challenged veniremen.

Defendant next contends that the court erred in permitting Trooper Moses to testify that he saw marijuana in defendant's trailer on February 25, 1976, because it was evidence of the commission of a crime different from that with which the defendant was charged; prior possession was not an issue and the incident was too remote in time; the evidence was so inflammatory and prejudicial as to require its exclusion.

Proof of the commission of a separate crime is not admissible unless it has a legitimate tendency to directly establish the defendant's guilt of the crime of which he is charged. Such evidence is logically relevant when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with the commission of the crime on trial. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304 (Mo. banc 1954).

In order to convict one for possession of a controlled substance under § 195.-020 RSMo. 1969, it is necessary for the state to prove that the defendant knowingly and intentionally had in his possession the prohibited substance. It must be shown that the defendant was aware of the presence and character of the substance and was intentionally and consciously in possession of it. *State v. Polk*, 529 S.W.2d 490 (Mo. App.1975).

It was necessary in this case for the state to show that the defendant knew of the character of the substance, and that he was intentionally in possession of it. The fact that there was a quantity of marijuana in defendant's trailer and that it was being used by defendant and others in this trailer on February 25 had a legitimate tendency

2. "If the defendant shows you a number of areas where you can find a reasonable doubt that is justified by the evidence, I would like for you all to say outloud, if you will, what your verdict will be if you find that the State has not proven its case beyond a reasonable doubt. [There was a collective response of 'Not guilty.']"

to prove that he knew of the character of the substance and that his possession on March 5 was intended.

If, as we hold, the testimony was logically relevant the lapse of eight days did not alter the character of the evidence. See *State v. Hudson,* 521 S.W.2d 41 (Mo.App. 1975).

■ As to the argument that the evidence was repetitious and so inflammatory and prejudicial as to require its exclusion, defendant refers us to the evidence that marijuana was found concealed in the back of stereo speaker cabinets and other places in the trailer as sufficient proof of defendant's knowledge of the nature and character of the substance. Where the evidence of other crimes is logically relevant the court must also consider the degree to which it may prejudice the jury against defendant. This calls for the exercise of discretion on the part of the trial court. *State v. Burr,* 542 S.W.2d 527, 531 (Mo.App. 1976). In the exercise of its discretion the court may also consider the heavy burden of proof placed upon the state in the presentation of evidence. *State v. Harris,* 534 S.W.2d 516, 522 (Mo.App.1976). With these principals in mind and considering the fact that defendant denied any knowledge that marijuana was concealed in his trailer we cannot say that the court abused its discretion in admitting the questioned evidence.

■ The defendant next urges that the court erred in admitting into evidence the testimony of Trooper Moses that defendant told him that defendant would have a large quantity of marijuana in the near future. This issue is not preserved for our review because defendant made no objection to the introduction of this evidence at trial. *State v. Peterson,* 546 S.W.2d 175 (Mo.App.1975).

Defendant contends that the court erred in permitting Trooper Moses to testify on rebuttal that he had purchased marijuana from defendant on February 25 at defendant's trailer. Defendant urges that the testimony was not proper rebuttal because the matter was not first introduced into evidence by defendant. He also argues that

this testimony was inadmissible because it was evidence of the commission of another crime which had no logical relevance to the crime alleged in the present case.

Defendant on his own behalf testified on direct examination that "There was some marijuana present" in his home on February 25 but that he did not own any marijuana on that date; that none of the marijuana found in his trailer on March 5 belonged to him; that he was unaware of its presence on the latter date. On cross examination he testified that the bag of marijuana in his trailer on February 25 had been there for about four days. It belonged to Victor McCurter and he told McCurter to get it out of his house. McCurter and Trooper Moses came and got it on February 25.

Trooper Moses testified over objection of the defendant that defendant gave him a bag containing just under a pound of marijuana for $160.00.

■ It is the rule in Missouri that when a defendant in a criminal trial is cross examined with respect to a collateral matter for purposes of impeachment "his answers . . . are conclusive and . . may not be the subject of rebuttal testimony". *State v. Panter,* 536 S.W.2d 481, 485 (Mo.App.1976). When a collateral issue is first tendered by the defense in direct examination or is volunteered on cross examination it becomes a proper subject for rebuttal. *State v. King,* 342 Mo. 975, 119 S.W.2d 277 (1938); *State v. Panter, supra.*

■ In the State's case the evidence with respect to February 25 was confined to the presence and use of marijuana in defendant's trailer. Ownership of the marijuana was not an issue. Ownership of the marijuana first became an issue during the direct examination of defendant and thus became a proper subject for rebuttal. The sale of the marijuana to Trooper Moses was evidence of defendant's ownership.

■ Because we hold that the testimony of Trooper Moses is proper rebuttal extended discussion of other objections to the testimony is unnecessary. What we have said with respect to defendant's objections to

references to the evidence of the presence of marijuana in the trailer on February 25 is also applicable here. We make the further observation that evidence of sales of narcotics by defendant would have been admissible in the State's case as having a legitimate tendency to show that defendant knew of the character of the substance found in the trailer on March 5 and that he intentionally and knowingly had it in his possession. *State v. Tygart*, 531 S.W.2d 47, 51 (Mo.App.1975).

Defendant argues that it was error for the court to admit into evidence a kitchen scale found on a table in defendant's trailer at the time of the execution of the search warrant on March 5, 1976.

█ Both defendant and the State concede that the scale readily leads to the conclusion that defendant was a seller of marijuana. The gravamen of the crime is intentional and conscious possession of the controlled substance with awareness of its presence and character. Whether the possession is for personal or commercial purposes is not significant. *State v. Tygart, supra.*

█ The presence of the scale in the place where marijuana was found packaged in roughly uniform weights had a tendency to prove the necessary elements of the crime. What we have said with respect to the other points raised with respect to the admission of evidence in this case is equally applicable here. See also *U. S. v. Jones*, 543 F.2d 627, [3–4] (C.C.A. 8th 1976), cert. den. 429 U.S. 1051, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977).

Defendant next claims that the court erred in refusing to grant a continuance because time for preparation for trial was "wholly inadequate."

We review the evidence which was before the trial court when it ruled defendant's motions for continuance. The charge upon which defendant was convicted was made by way of information on March 23, 1976. He appeared with counsel on March 24 and entered a plea of not guilty and the cause was set for trial on May 10, 1976. Defendant, upon application, was granted a change of judge on April 28, 1976 and on June 24, 1976 he was granted a change of venue from Dunklin County to Cape Girardeau County. The case was set for trial for March 17, 1977.

The lawyers representing defendant at that time also represented him in a case in which defendant was charged with the sale of a controlled substance. That case was tried on February 1, 1977 resulting in a jury verdict of guilty. On February 5, 1977 he had a conference with attorneys then representing him concerning disposition of the two cases. According to defendant the conversation terminated with defendant saying "you can consider you no longer represent me." There was evidence to the effect that former counsel were unaware that defendant did not desire them to represent him until they were contacted by present counsel who had been advised by defendant that they had withdrawn from the case.[3]

Defendant contacted present counsel on March 1, 1977 and left the transcript of the former trial with him on that date. On March 3, 1977 counsel was retained to represent defendant on appeal in an earlier case and for trial of the present case. On March 4 counsel called the court and was granted an additional ten days in which to file the motion for new trial in the case on appeal. At the same time counsel asked the court if it would continue the trial from March 17. The court told counsel that it was an old case and would not be continued. On March 10 defendant filed a motion for continuance. On Saturday, March 12, counsel called the court to ask that it rule on the motion for continuance and was advised

---

**3.** At one time defendant testified that he met with his attorneys Mr. Cable and Mr. Seabaugh on February 3 or 5 at which time the conversation occurred. At another time he testified that Mr. Seabaugh was not present at the February meeting; that he had a meeting with Mr. Seabaugh on March 3 and was told by Mr. Seabaugh that if defendant did not follow his advice he would no longer represent him. He said he contacted his present counsel the next day or two. ". . . I had to check out to see who to hire."

that the motion would be denied on Monday. The entry denying the motion was made on Monday, March 14.

On the date of trial defendant filed another motion for a continuance. After an evidentiary hearing and argument the motion was denied.

■ The granting of a continuance is within the discretion of the trial court and when the denial of a continuance is challenged we indulge every intendment in favor of the trial court's action. *Ramsey v. Grayland*, 567 S.W.2d 682 (Mo.App.1978).

■ The trial court here could have believed that defendant had discharged counsel about six weeks before the trial knowing that it was set on March 17 and retained counsel about two weeks before trial which would place the responsibility for any time restrictions upon defendant. *State v. Ross*, 375 S.W.2d 182, 185 (Mo.1964). Nor would we find that the court had abused its discretion based solely on the fact that counsel was retained two weeks before trial. The court made it clear to the defense on the day that counsel was retained that it was not disposed to grant a continuance. In the last analysis our review of the transcript leads us to concur with the trial court's conclusion that defendant was well represented by counsel who was acutely aware of the facts and circumstances of the case and the applicable law. *State v. McCreary*, 504 S.W.2d 132, 135 (Mo.App.1973). The court did not err in failing to continue the trial in this case.

The final issue concerns the court's refusal to grant to defendant relief from the sentence imposed by the court. On July 28, 1977, more than three and a half months after the motion for new trial had been overruled and judgment entered, defendant filed "Defendant's Motion To Amend Record" with the trial court.

By the judgment entered in this case the sentence of five years is to run consecutively with a sentence of five years imposed upon his conviction for sale of a controlled substance. Defendant sought to have the court "amend the record" in this case so that the sentences would run concurrently. The court indicated that it might be disposed to consider some relief but denied the motion on the ground that it had no jurisdiction to entertain the motion. Defendant argues that the court had the power to grant the relief request under rule 26.05 which reads as follows:

"Upon the trial of any indictment or information the court may at any stage of the proceeding, in furtherance of justice, amend or supply any pleading, writ, process, entry, return or other proceedings; and the court in which the indictment was found, or the information filed, or in which the trial is had, may at any time before final disposition of the case, either in such court or the court to which the same may have been appealed, and whether at the same or different term of court, amend or supply any record in accordance with the fact. If the same be pending on appeal at the time any such record is amended or supplied, the part thereof so amended or supplied shall be immediately certified to the appellate court by the clerk of such trial court."

■ This rule is intended to correct the record so as to reflect the facts, it does not empower the trial court to enter a new and different judgment. It can only "amend or supply and record in accordance with the fact." There is no evidence of record that the judgment entered was not in fact the judgment of the court. At the hearing on the motion the court stated for the record, that at the time the judgment was entered it was its "intention to sentence [defendant] to five years plus five years, consecutively." The judgment was in accordance with the fact and the court had no jurisdiction to grant the relief requested. See *State v. Summers*, 501 S.W.2d 548 (Mo.App.1973).

We find no prejudicial error; the judgment is affirmed.

REINHARD and STEPHAN, JJ., concur.