**STATE of Missouri, Respondent,**

v.

**Deborah Anne PILCHAK, Appellant.**

**No. WD 34594.**

Missouri Court of Appeals,
Western District.

June 14, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 2, 1983.

Application to Transfer Denied
Sept. 20, 1983.

William M. Barvick, Jefferson City, for appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and DIXON and NUGENT, JJ.

CLARK, Presiding Judge.

Deborah Anne Pilchak was indicted on two charges, the first for the felony sale of cocaine, a Schedule II controlled substance, § 195.020, RSMo 1978, and the second, for unlawful use of a weapon, § 571.030, RSMo Supp.1982. The first count alleged appellant to have acted in concert with one Gary Erwin McCaw in the cocaine sale. The weapons charge was based on appellant's conduct alone. Verdicts of guilty were returned by the jury on both counts and, in accordance with the recommendation of the jury, a sentence of life imprisonment was imposed on the drug charge and a two year sentence on the weapon offense. This court is vested with jurisdiction of the appeal under Article V, § 3, Missouri Constitution as amended, 1982; *State v. Martin,* 644 S.W.2d 359 (Mo. banc 1983).

From the evidence presented, the jury was entitled to find that the following events occurred late in the year 1981. In October, an informer divulged to the Cole County Sheriff the operation of a drug ring handling illicit sales of cocaine. The leader of the enterprise was reported to be Gary McCaw. Based on this information, John Bickers, a Missouri State Highway Patrol officer, was assigned to conduct an undercover investigation. Bickers, using an assumed identity, was introduced to McCaw by the informer, Lee Downing, for the purpose of negotiating a cocaine purchase.

The initial purchase was represented by Bickers to be a sample transaction of one ounce as a prelude to quantity purchases later. On this date of the first introduction, November 11, 1981, a purchase was concluded for $2500.00. Additional one ounce purchases were made by Bickers from McCaw on November 17 and November 24.

On the last mentioned date, a larger purchase was discussed and an agreement for the sale of a kilo (2.2 pounds) of cocaine was reached. The parties agreed to meet at the Best Western Motel in Jefferson City the morning of December 5, 1981. To this point, Officer Bickers had not seen appellant and her name had not been mentioned.

It was planned to conclude the undercover operation with this final drug sale and, as a consequence, the Best Western Motel was placed under extensive surveillance. Rooms 135 and 137 of the motel were rented, the latter to be used by Bickers and a Columbia police officer who was posing as Bickers' partner and the former by officers who were electronically monitoring Room 137. Outside the motel, two other cars of officers were keeping watch. From these sources, McCaw and appellant were seen to arrive together and enter the motel. Inside, appellant and McCaw acted as strangers and each registered in a separate room, appellant being assigned Room 139 and McCaw Room 141. Appellant registered under a former married name, gave a Michigan address and a false license plate number.

At 10:00 A.M., in accordance with the prearrangement, McCaw telephoned Bickers' room and told him to come to Room 141. Bickers did so and there found McCaw with a briefcase. The briefcase contained a large plastic bag enclosing a white powder and a hard crystal structure of high grade cocaine known as a "rock." The amount of cocaine was 20 ounces, only a part of the purchase. McCaw informed Bickers that the balance of the drugs were in the next-door room with his girlfriend.

It was Bickers' assignment to complete the transaction in Room 137 and he persuaded McCaw to accompany him there to meet his partner who had the money to pay for the purchase. McCaw, carrying the briefcase, left Room 141 to walk with Bickers to Room 137. In doing so, they passed Room 139 where McCaw stopped and knocked. Appellant opened the door and took the briefcase which McCaw handed to her. No words were exchanged. McCaw and Bickers then proceeded to Room 137 where McCaw was introduced to Bickers' purported partner. The officers had $55,-000.00 in cash to make the purchase and this was shown to McCaw. Computed at a reduced price for quantity purchase, the price to be paid McCaw for the one kilo of cocaine was $53,800.00.

Apparently being satisfied that the transaction could be concluded, McCaw left the room and returned in about 30 seconds carrying the briefcase deposited a few minutes earlier in Room 139. When the briefcase was opened, it contained, in addition to the large plastic bag, twelve smaller bags also containing a white powder found to be cocaine. McCaw was then given the currency and while he was counting it, the officers in the next room were alerted and McCaw was arrested.

At this same time, the other officers who had been stationed outside went to Room 139 and were admitted by appellant. She was placed under arrest and her purse was seized. Upon examination, the purse was found to contain a loaded revolver and more than $2500.00 in cash. Among the bills, two had serial numbers matching those used to make the drug purchases from McCaw the month before. Drug paraphernalia was recovered from the vehicle in which McCaw and appellant had arrived.

I.

In her first point, appellant contends the evidence by Bickers as to the drug sales made by McCaw in November should have been excluded as "evidence of separate crimes that were not charged in the indictment." She argues that prejudice was entailed because the evidence was offered to prove appellant and McCaw were major

drug dealers whose activities extended beyond the single transaction charged in the indictment.

In support of the argument, appellant cites three cases: *State v. Reed,* 447 S.W.2d 533 (Mo.1969); *State v. Carter,* 475 S.W.2d 85 (Mo.1972); and *State v. Burr,* 542 S.W.2d 527 (Mo.App.1976). None of these cases, however, is of any aid to appellant because in each the prejudice and consequent reversal were based on evidence of other drug sales made by the defendant. Here, the testimony by Bickers was of transactions with McCaw alone with no mention made of appellant.

■ While it is generally the rule that evidence tending to prove other crimes is inadmissible, the rule does not apply when there is no evidence linking the accused with the other crimes. *State v. Hurst,* 612 S.W.2d 846, 855 (Mo.App.1981). In order to invoke the rule excluding proof of other crimes, there must be evidence the defendant has committed, been accused of, convicted of or definitely associated with another crime or crimes. *State v. Jones,* 523 S.W.2d 152, 155 (Mo.App.1975).

■ Here, Bickers affirmatively disclaimed any mention of appellant in his dealings with McCaw on November 11, 17 and 24 and no evidence given by Bickers associated appellant with those drug sales. The exclusionary rule of proof of other crimes was therefore inapplicable to Bickers' testimony. We also note that the first objection lodged by defense counsel to the testimony by Bickers came after Bickers had already related, without objection, his first meeting with McCaw on November 11 to complete the cocaine purchase. Although a motion in limine had been filed by the defense addressing the subject, the defendant was not thereby relieved of the duty to make a timely objection at trial. *State v. Ewanchen,* 587 S.W.2d 610, 611 (Mo.App.1979). No error on this account was preserved for appellate review. *State v. Stamps,* 569 S.W.2d 762, 765 (Mo.App. 1978).

■ The foregoing analysis has been applied only to the testimony by Bickers, the first witness called by the state. Succeeding witnesses for the state, during presentation of the state's case in chief, supplied nothing materially different as to the details of the three November drug transactions. In rebuttal, however, the state called as a witness the informer, Downing. As will hereafter be discussed, the purpose of Downing's testimony was to refute appellant's claim that she had no actual knowledge that McCaw was dealing in restricted drugs. Downing testified that he was with McCaw during the November 11 transaction and that the two left Bickers for the purpose of meeting appellant some four blocks away and obtaining the drugs she was holding. Downing thus implicated appellant as a participant in the November 11 offense.

The testimony by Downing brought the evidence of the November 11 sale within the general proscription of evidence of other crimes, a circumstance not present when the court was required to rule on the objection to Bickers' testimony. With this development, an objection to Downing's testimony would have been appropriate as would a motion to strike all evidence of that incident. The testimony by Downing, however, came in without objection by appellant, thus waiving any possible claim of error as to evidence of appellant's criminal agency in the November 11 drug sale. Except as hereafter is discussed, this circumstance renders unnecessary any consideration of whether the evidence was admissible to prove intent and the absence of mistake or accident.

In summary, the testimony by Officer Bickers as to drug sales by McCaw was admissible in the case against appellant because that and other evidence in the state's case in chief did not implicate appellant in those transactions. When rebuttal evidence by the state linked appellant to the November 11 sale of cocaine, any claim of error was waived by the failure of appellant to object.

## II.

In her second point, appellant seeks a reversal on the ground of plain error contended to have occurred in the receipt of rebuttal testimony from the informer, Downing. This court approaches the point under a handicap because appellant's brief does not comply with Rule 30.06(d). Appellant's statement of the point does not assert why error is claimed by reason of the admission of the testimony, much less how plain error entitles appellant now to complain where no objection was interposed at trial. In the interest of deciding the case on the merits, we take up the point as we perceive it from the argument and the record.

The testimony by Downing was to the effect that he had worked as a distributor of cocaine for McCaw as a member of McCaw's drug ring. According to Downing, he knew appellant as being active in McCaw's sale of drugs for more than a year before December, 1981. In that time, by Downing's observation, appellant had obtained cocaine in Connecticut and brought it to Missouri, she had prepared drugs for sale, took orders for purchases, kept sale records and made deliveries. He additionally testified, as noted in Point I, to the participation of appellant in the November 11 transaction with Bickers. The presentation of Downing's evidence followed appellant's own testimony in which she denied knowledge of McCaw's activity and claimed she was unaware either that the briefcase given to her by McCaw contained cocaine or that he was making a sale of drugs to Bickers.

From the argument portion of the brief, it appears appellant is contending the evidence by Downing was inadmissible because it constituted proof of unrelated other crimes committed by appellant. Cited in support of the point are the same three cases noted in the first portion of this opinion, *State v. Reed, supra, State v. Carter, supra,* and *State v. Burr, supra.* These three cases share a common element. In each, the accused was shown by the evidence of the prosecution to have made a sale of a controlled substance to an undercover operative. In each, the state sought to bolster its case by proof of separate and distinct sales or offers to sell drugs on other dates. In the *Burr* and *Carter* cases, the defendants denied their participation in the sales charged in the prosecution and offered alibis to prove their presence elsewhere. In the *Reed* case, the nature of the defense does not appear, but there, as in *Burr* and *Carter,* the admission of proof of other crimes was held to have been in error for the reason that the proof did not tend to establish any fact in issue relative to the commission of the crime charged.

■ From these same cases there may be extracted the controlling propositions bearing on admission in a criminal prosecution of evidence of other unrelated crimes committed by the accused. That proof may be allowed when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other and the identity of the person charged. *State v. Burr, supra* at page 530. Whether evidence of other crimes falls within the exceptions and may thus be admitted depends on whether it is logically pertinent in that it reasonably tends to prove a material fact in issue. *State v. Reed, supra* at page 530. See also, *State v. Shaw,* 636 S.W.2d 667, 672 (Mo. banc), *cert. denied,* —— U.S. ——, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982).

■ In the present case, appellant's defense was based on her claim that she had no knowledge of what was taking place at the motel in the transaction between McCaw and Bickers and, specifically, that she did not know the briefcase passed to her and ultimately returned to McCaw contained cocaine. While this aspect of the defense served to focus attention on the question of whether or not appellant was an innocent dupe of McCaw, the state was nonetheless obligated to adduce proof of appellant's culpable mental state before a conviction could be obtained. *State v. Green,* 629 S.W.2d 326 (Mo. banc 1982). In

*State v. Cheesebrew,* 575 S.W.2d 218 (Mo. App.1978) [1] the defendant was charged with possession of marijuana. The court admitted evidence by a police officer that he had observed marijuana in the defendant's trailer on an earlier date despite defendant's objection that the evidence was proof of another crime. As the opinion states:

"It was necessary in this case for the state to show that the defendant knew of the character of the substance, and that he was intentionally in possession of it. The fact that there was a quantity of marijuana in defendant's trailer and that it was being used by defendant and others in this trailer on February 25 had a legitimate tendency to prove that he knew of the character of the substance and that his possession on March 5 was intended." *Cheesebrew* at page 222.

In the present case, proof that appellant had a longstanding association with McCaw in an illicit drug sale enterprise was logically pertinent as tending to prove that appellant knew what the purpose of McCaw's meeting was at the motel and that appellant was functioning as an active participant in the sale of cocaine. As such, the evidence constituted one of the exceptions to the rule prohibiting proof of other crimes and the testimony was properly offered and received.

### III.

In a third and final point, appellant contends the evidence was insufficient to sustain the conviction on the charge of carrying a concealed weapon because the motel room in which she was arrested is the equivalent of a "dwelling," an exception under the statute, and because there was no proof she was carrying the weapon. The point is again urged as plain error because appellant filed no motion for acquittal at the close of the state's case and for the further reason that appellant presented evidence in her own behalf. We review the point in this posture. *State v. Neal,* 610 S.W.2d 358 (Mo.App.1980).

Section 571.030, RSMo Supp.1982, the statute under which appellant was charged, proscribes the unlawful use of weapons including the carrying of a weapon concealed on or about the person. The statute is not applicable when the person (actor) "is in his dwelling unit." Section 571.030.3, RSMo Supp.1982. Appellant argues that she had authority and control over the room because she had paid the rental, had a room key and locked the door and was occupying the premises. Cited to support her contention is *State v. Northcutt,* 598 S.W.2d 130 (Mo. banc 1980). The *Northcutt* case is of doubtful application. There the issue was whether the accused had violated § 562.070, RSMo 1969 (repealed) by shooting into a tavern, part of which was also used as living quarters. The court defined dwelling house as a place occupied by a family as a place of residence, an abode, a habitation, and because of the statute's purpose to protect the security of one's habitation, approved a broad definition of dwelling to affirm the conviction of Northcutt.

It is unnecessary in this case to decide whether, under some circumstances, a motel could be construed as a dwelling unit for purposes of the weapons statute. At a minimum, one seeking the benefit of the exception applicable to a place of habitation must be in occupancy of the structure for the purpose of a dwelling, albeit transient or temporary. Here, the only evidence indicates appellant and McCaw had no purpose to use the motel except to conclude the drug sale. They had living quarters at McCaw's farm some forty minutes distant and plainly had no intent to use the rooms for any purpose even arguably associated with a place of habitation. The exception

---

1. *State v. Cheesebrew* reaches an opposite holding but does not mention *State v. Gordon,* 536 S.W.2d 811 (Mo.App.1976) which concluded that § 195.020, RSMo Supp.1973 requires no proof of a culpable mental state. *Gordon* held that criminal intent is not an element of an offense where the commission of a crime is defined without reference to intent. *Gordon* was expressly overruled in *State v. Green* and thus, *Cheesebrew* is useful for analogy although decided before the effective date of the January 1, 1979 Criminal Code.

as to weapons kept in a dwelling unit was not applicable here under the facts.

In her second contention as to the sufficiency of the proof to support the weapons conviction appellant argues there was no evidence that she carried a concealed weapon at any time. By all accounts, the gun was in appellant's purse lying on a bed in the motel room. The purse was, however, within appellant's reach not more than one or two feet from her when the officers entered the room to make the arrest. Appellant seems to urge that she could not be convicted on this charge if the purse were not on her person.

The point is ruled by the opinion in *State v. Patterson,* 624 S.W.2d 11 (Mo.1981) where the defendant faced the same charge on proof that he had the weapon under the driver's seat of his truck. The court stated:

> "Whether the weapon is concealed on or about the person as forbidden by the statute (§ 571.115, RSMo 1978) is determinable by whether it is in such close proximity to the accused so as to be within his easy reach and convenient control." *Patterson* at page 13.

The evidence here placed the loaded .38 caliber Colt revolver within arm's reach of the appellant. The weapon was thus accessible to the extent required for conviction under the statute.

The judgment is affirmed.

All concur.