**STATE of Missouri, Respondent,**

**v.**

**Steven A. JOHNSON, Appellant.**

**No. WD 37025.**

Missouri Court of Appeals,
Western District.

July 22, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1986.
Application to Transfer Denied
Oct. 14, 1986.

Sean D. O'Brien, Public Defender, Bruce Anderson, Asst. Public Defender (argued), Kansas City, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Paul LaRose (argued), Asst. Attys. Gen., Jefferson City, for respondent.

Before DIXON, P.J., and MANFORD and NUGENT, JJ.

NUGENT, Judge.

The defendant, Steven Johnson, was tried before a jury on a two count indictment for promoting prostitution in the first and second degree. §§ 567.050, 567.060, R.S.Mo. (1978). Defendant was sentenced by the court as a persistent offender to a fifteen year term of imprisonment. Defendant now appeals his conviction, asserting that the trial court erred (1) in denying his motion for continuance (2) by permitting the introduction of hearsay evidence made by an alleged co-conspirator, and (3) in overruling his alternative motions for judgment of acquittal or for new trial. We affirm the conviction.

Charlotte McDonald began working as a prostitute in 1979. In September, 1980, Myra Hamms, another prostitute, introduced her to the defendant Johnson because "he was a good pimp" and she wanted McDonald to "choose up with him." After they were introduced, Ms. McDonald started working for the defendant. The arrangement required Ms. McDonald to engage in sexual acts for money in exchange for a place to stay, clothing, drugs, and payment of bonds upon her arrest.

In 1980, Ms. McDonald shared an apartment at 26th and Brooklyn with Myra Hamms and occasionally with the defendant. He drove the women to areas where they solicited customers and picked them up at the end of the night and took them home. Charlotte McDonald gave any money she earned directly to the defendant or to Myra Hamms, who would then turn it over to the defendant. When the women were arrested, the defendant would arrange bond for Ms. Hamms who, upon release, would arrange bond for Ms. McDonald. Ms. McDonald was expected to earn at least one hundred dollars a night and more on weekends, and if she earned less than that, defendant would beat her. She worked for the defendant for two months and quit because she was tired of the beatings, but she continued to work as a prostitute for another pimp.

In 1982, defendant Johnson confronted her as she was leaving a 7-Eleven Food Store. He grabbed her, pulled her into his car and drove her to the apartment. There he beat her with his fists and pointed a gun at her, threatening to shoot her in the knee to make sure that she would never run away again. Afterward, he ordered Ms. McDonald to "go make some money for him." She went back to work with Myra Hamms, who had been told to watch her to make sure that she did not try to run away again.

Ms. McDonald worked for the defendant for the next two months but left again because he beat her when she earned less than one hundred dollars a night.

In May, 1984, the defendant again accosted Ms. McDonald. He coerced her into his car and threatened to cut off her tongue if she tried to escape. He drove her to 3521 Baltimore where in the presence of Myra Hamms and an unknown male he struck her face and chest with his fists. He told her that she could never run or hide from him again.

Defendant Johnson again ordered Ms. McDonald to work the streets with Myra Hamms, who was told to keep a watch on Ms. McDonald. Once again, the defendant beat Ms. McDonald or made her work longer hours if she did not earn more than one hundred dollars a night.

Ms. McDonald was arrested three times in May. Myra Hamms arranged for her bond with money the defendant gave her.

On Memorial Day weekend, defendant Johnson took the two women to Omaha to attend the horse races. That evening, after the races, he told them to "go out and make some money." Ms. McDonald returned to the motel empty handed and told

the defendant that she had turned down a ten dollar date. He kicked her twice in the stomach and burned her face with a cigarette.

The next morning they returned to Kansas City and that evening defendant Johnson ordered the women to work the streets. Both were arrested and taken to the Linwood station. This time Charlotte McDonald, tired of the beatings, refused bond and remained in jail. She spoke with Detective Starbuck, who described her appearance as worn, haggard, withdrawn, nervous, and ill. She held her stomach as she spoke to him, and while detained at the station she vomitted twice. She told Detective Starbuck that she would assist in the investigation of this case if she could be placed in protective custody and if her city cases could be disposed of. Detective Starbuck told her that he could not make any promises to her regarding her city tickets, but later a municipal court judge who had been apprised of Ms. McDonald's cooperation with the police in this case, placed her on probation on her city cases.

When Detective Starbuck arrested defendant Johnson, he found on defendant a check payable to Myra Hamms drawn on the account of Liberty Bonding Company. The check contained a notation that it was written for Charlotte McDonald.

Myra Hamms was later arrested and interrogated. Defendant Johnson's papers and driver's license were in her possession at the time of her arrest.

## I.

In Point I, defendant claims that the trial court erred in denying his motion for a continuance because defendant did not have a reasonable opportunity to employ counsel of his own choosing and to consult with counsel in preparation for trial.

The trial court has discretion to grant continuances or not. *State v. Gaskin*, 618 S.W.2d 620, 626 (Mo.1981). When an appellate court reviews the trial court's refusal of a continuance, it indulges every factor in favor of the trial court's action. *Id.*, citing *State v. Cheesebrew*, 575 S.W.2d 218, 225 (Mo.App.1978). Furthermore, a party must make a very strong showing to induce an appellate court to interfere with a trial court's ruling in such cases, and the appellate court will not overturn such a ruling unless the trial court clearly abused its discretion or acted arbitrarily, capriciously and oppressively. *State v. Oliver*, 572 S.W.2d 440, 445 (Mo.1978) (en banc); *State v. Sloan*, 666 S.W.2d 787, 790 (Mo.App. 1984).

In this case the defendant and his co-defendant, Myra Hamms, retained Mr. Jeffrey Alena as their attorney, but Mr. Alena later withdrew from the case because of a conflict of interest.[1] Shortly thereafter, Mr. John Lazano entered his appearance.

Mr. Lazano also urged the court to reconsider the defendant's motion for a continuance filed on February 8, 1985, the fourth application for a continuance filed in this case. The court denied the motion on the day it was filed, and Mr. Lozano received notice of that ruling on February 14, six days before trial. On the day of trial, February 20, Mr. Lazano appeared in court for the defendants equipped with a motion to sever the cases.

Defendant Johnson told the court that on February 19, he was first notified of the trial and told that he had a new attorney. He met with Mr. Lazano for the first time on the day of trial, February 20. The court told both defendants that they had the right to pick their own lawyers if they did not approve of Mr. Lazano, to which defendant Johnson replied, "I'm not saying I don't approve of him." Later he told the court, "I would like to have him [Mr. Lazano] go ahead and represent me."

Mr. Lazano argued that he met the defendant that morning and that, although he "obtained as much information as would be helpful for achieving at least a minimum level of effective assistance of counsel," he felt that the cases would be more complex if tried jointly. He admitted that, if the

---

1. Mr. Alena had previously represented the victim in this case, Ms. Charlotte McDonald.

cases were severed, "then that would remove the predominant part of the complexity" of the cases. The trial court sustained the motion to sever.

With respect to the continuance, Mr. Lazano told the court that the "basic problem" with trying the case was the insufficient amount of time he had to interview the victim, Charlotte McDonald, and that he did not have enough background information about her effectively to cross-examine her at trial. (He had spoken to her that morning for about fifteen minutes.) The court told counsel that

> to give you some breathing room, we're going to pick a jury and we're not going to put any evidence on, we're not going to swear a jury or anything else, and ... we'll not get started with the evidence until tomorrow, late, very late, because of arraignments in the morning and a bunch of pleas and things I've got to handle. So, we've got all day tomorrow to finish your talking to the victim....

The next day the court asked Mr. Lazano if Charlotte McDonald had been made available to him for interview. He replied,

> Your Honor, I think the time that I spent with her—I may change my mind, but I doubt it, but as far as I'm concerned, I had a good interview with her. I think I covered almost everything I needed to with her.

Mr. Lazano also informed the court that he would use that evening and the following morning to confer with defendant Johnson. He then filed with the court a motion in limine requesting the court to keep out certain anticipated testimony that would be prejudicial to defendant's case and presented oral argument in support of his motion. The court sustained his motion in part.

Mr. Lazano clearly demonstrated a readiness to go to trial on February 21, having had time to interview the state's key witness, and he did not renew his request for a continuance.

At the close of all the evidence, defendant Johnson told the court that his primary complaint with regard to Mr. Lazano's representation was that Mr. Lazano did not have enough time to prepare his case. At that time, however, Mr. Lazano asked defendant Johnson, "Is there anything that ... you have wanted me to do that I did not do?" and "Is there anything that I have done so far as your defense is concerned that you did not want me to do?" To both questions defendant replied, "No."

■ Mr. Lozano's vigorous representation of defendant during trial demonstrated his complete command at the facts of this not too complex case. *Cf. State v. Bibee*, 496 S.W.2d 305, 311 (Mo.App.1973). The defendant chose to have Mr. Lazano represent him, and nothing in the record indicates that Mr. Lozano's representation of the defendant was anything but effective. Nothing in the record indicates that defendant was prejudiced or that the trial court abused its discretion.

## II.

■ Defendant claims in Point II that the trial court erred in admitting Detective Starbuck's testimony as to an extrajudicial declaration of alleged co-conspirator, Myra Hamms. He asserts that the statement is hearsay, that it was not made in furtherance of the conspiracy, and that its admission violates defendant's constitutional right to confront witnesses.

Before trial, defendant filed a motion in limine that among other things moved to exclude all extrajudicial statements made by Myra Hamms. The state argued that Myra Hamms' out-of-court statements were made in furtherance of the conspiracy with the defendant to promote prostitution. The court informed counsel that its decision to admit the detective's testimony about Myra Hamms' statements would be conditioned upon the state's proving that a conspiracy existed. Upon hearing the testimony of the state's key witness, Charlotte McDonald, the court made a finding that a conspiracy to promote prostitution existed between Ms. Hamms and the defendant.

When Detective Starbuck was called to testify, defense counsel renewed his motion in limine and argued that the conspiracy

terminated upon Charlotte McDonald's arrest on May 29, 1984, and that any statements made after that are hearsay. Defense counsel further objected to the speculative nature of Ms. Hamm's declaration, arguing that it invited the defendant to come forward and testify.

Detective Starbuck's testimony on direct examination by Marietta Parker, Assistant Prosecuting Attorney, that gives rise to this point on appeal is as follows:

Q. Did you ask her anything about what she did with the money she earned?

A. Yes.

Q. What did you ask her?

A. I asked her if any of the money she made from acts of prostitution did she give to Steven Johnson.

Q. What was her reply?

A. She said, 'Whatever he says.'

As the statement, "Whatever he says" appears in the transcript, we are unable to determine its meaning or what the jury may have taken it to mean. Defendant says that it is an admission by Myra Hamms, that she gave "the defendant whatever amount of her proceeds he demanded." On the other hand, the state argues that Myra Hamm's "equivocal and evasive answer was an attempt to hinder and defeat" defendant's prosecution, putting it within the conspiracy exception to the hearsay rule.

The statement is too ambiguous to divine its exact meaning, therefore, it cannot be said that it was made in furtherance of a conspiracy, assuming that the conspiracy continued to exist at the time Myra Hamms made the declaration.

■ Missouri follows the principle that if the declaration of a co-conspirator is not in furtherance of the object of the unlawful combination, or if the declaration was made before the formation of the conspiracy or after the consumation of its purpose, the declaration is hearsay and is not binding upon the co-conspirator on trial. *State v. Chernick*, 278 S.W.2d 741, 748 (Mo.1955);

*State v. Rayner*, 549 S.W.2d 128, 131 (Mo. App.1977).

■ Since this statement is excludable hearsay, the question is whether its admission constituted harmless error. Error in the admission of evidence "can be declared harmless only if we are able to declare a belief that it was harmless beyond a reasonable doubt." *State v. Murphy*, 693 S.W.2d 255, 267 (Mo.App.1985), citing *State v. Miller*, 650 S.W.2d 619, 621 (Mo.1983) (en banc); *see also Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) ("before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.").

The resolute testimony of Charlotte McDonald coupled with defendant's papers and driver's license found in the possession of Myra Hamms upon her arrest plus the Liberty Bonding Company check found on defendant serve to overcome any claim of prejudice caused by the admission of this enigmatic extrajudicial statement.

### III.

In Point III, defendant claims that the trial court erred in denying his alternative motions for judgment of acquittal at the close of all the evidence or for new trial because the verdict of guilty "was against the greater weight of the evidence" and a rational trier of fact could not have found beyond a reasonable doubt that defendant was guilty of compelling Charlotte McDonald to engage in prostitution.

In a criminal appeal, we have no perogative to weigh the evidence. Our review is limited to a determination of the sufficiency of the evidence to support a verdict. *State v. Lamaster*, 534 S.W.2d 574, 578 (Mo.App.1976). However, upon review of defendant's brief and motion for new trial, we have determined that the issue preserved is one of insufficiency of the evidence.

Defendant primarily argues that, because Charlotte McDonald continued to

work as a prostitute between the times that she worked for the defendant, she was not being forcibly compelled to engage in prostitution. Defendant also suggests that her association with the defendant was not the result of compulsion because she had several opportunities to leave or to contact the police.

Upon reviewing the record to determine whether the evidence was sufficient, we must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. *State v. Brown,* 660 S.W.2d 694, 699 (Mo.1983) (en banc); *State v. Story,* 646 S.W.2d 68, 72 (Mo.1983) (en banc).

■ Viewing the evidence in the light most favorable to the State, we conclude that the evidence is sufficient to support defendant's conviction.

Charlotte McDonald testified that she elected to work as a prostitute for the defendant in 1980. After working for the defendant for two months she quit because he beat her whenever she did not earn more than one hundred dollars a night.

In 1982, defendant came upon Ms. McDonald and immediately grabbed her, forced her into his car and drove her to an apartment where he beat her. He then pointed a gun at her and threatened to shoot her in the knee to prevent her from running off. She again left the defendant after two months because of repeated beatings she received whenever she brought in less than one hundred dollars a night.

Ms. McDonald encountered the defendant again in May, 1984. Again he forced her into his car and drove her to an apartment where he beat her with his fists and told her she could never run or hide from him.

That evidence was sufficient for a jury reasonably to conclude that the defendant promoted prostitution by compelling Charlotte McDonald to engage in prostitution.

For the foregoing reasons, the judgment of the trial court is affirmed.

All concur.